Hal HEMPEL, Plaintiff-Appellant,†

v.

CITY OF BARABOO and City of Baraboo Police
Department, Defendants-Respondents.

Court of Appeals

*No. 03–0500. Submitted on briefs September 8, 2003.—*
*Decided November 20, 2003.*

2003 WI App 254

(Also reported in 674 N.W.2d 38.)

† Petition to review granted 2-24-04.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Aaron N. Halstead* and *Katy Meter Lounsbury* of *Shneidman, Hawks & Ehlke, S.C.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James C. Bohl*, city attorney of Baraboo.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Hal Hempel appeals from a circuit court order granting summary judgment in favor of the City of Baraboo and the City of Baraboo Police Department (collectively, the City) on his challenge to their denial of his open records request. Hempel, a City of Baraboo police officer, argues that the circuit court erred when it found that the public's presumptive right to disclosure of investigatory records

related to an internal complaint filed against him was outweighed by the public's interest in non-disclosure. He argues that the circuit court failed to conduct a proper balancing analysis and that under the facts of this case the privacy interest of the alleged victim and the witnesses does not outweigh the public's interest in disclosure. We disagree and affirm the summary judgment order of the circuit court.

## FACTS

¶ 2. Hempel has been a City of Baraboo police officer for twenty-two years. In late January 2000, Captain Dennis Kluge of the City of Baraboo Police Department informed Hempel that a fellow officer, Kaye Howver, had filed a complaint against Hempel, accusing him of sexual harassment. On February 10, 2000, Hempel received a copy of the Howver complaint and a memo inviting him to attend an interview to respond to Howver's complaint. On February 18, 2000, Hempel provided a recorded response to Kluge's questions regarding the complaint.

¶ 3. On August 11, 2000, Chief of Police Thomas Lobe gave Hempel a memorandum detailing the disposition of the complaint. The memo was "documentary only" and not disciplinary in nature and indicated that the memo would be retained in Hempel's personnel file for a period of three years from July 8, 2000. The memo further indicated that if another complaint of a similar nature was received, this complaint could be considered at that time.

¶ 4. On January 24, 2001, Hempel, via his attorney, served an open records request upon the City, pursuant to WIS. STAT. § 19.35[1] and WIS. STAT. § 103.13(2), which entitles an employee to inspect specified personnel documents including documents relating to disciplinary action against the employee. Hempel requested copies of written materials pertaining to Howver's complaint against him. On January 31, 2001, Chief Lobe responded to Hempel's request in writing stating "the only reference to the [_____] complaint in Officer Hempel's personnel file is the letter to officer Hempel from the [Chief] dated August 11, 2000 . . . ." In that letter, no disciplinary action was taken under § 103.13(2). The Chief denied Hempel's request under § 103.13(2) to inspect any additional documents since there were no additional documents in Hempel's personnel file. The Chief stated he would respond to Hempel's public records request by a separate letter.

¶ 5. On January 31, 2001, Lobe retired and Kluge was appointed police chief. Chief Kluge provided a written response to Hempel's open records request under WIS. STAT. ch. 19 stating that, after applying the balancing test, he was releasing certain records in redacted form. The documents were sent to Hempel's attorney. The documents, which were eventually released in redacted form to the public by a letter from Chief Kluge on March 13, 2001, are:

1. Officer's report dated January 24, 2000.

2. Sauk County Sheriff's Office complaint dated February 10, 2000.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

3. Letter dated August 11, 2000, to a Baraboo police officer signed by Chief of Police Thomas Lobe.

4. Letter to James C. Bohl, City Attorney, dated August 7, 2000, from Attorney Aaron N. Halstead.

5. Letter to James C. Bohl, dated June 16, 2000, from Attorney Halstead.

¶ 6. Chief Kluge denied Hempel's request for documents created from the department's internal investigation of Officer Howver's complaint and reiterated the nonexistence of any additional documents in Hempel's personnel file.

¶ 7. Chief Kluge provided the following reasons for denying Hempel's request for the investigation documents:

1. The City harassment policy provides that when a complaint is received, such as the one made by Officer [_____], a "confidential investigation" of the alleged activity will be undertaken by the City. Although it could be argued that the court decisions interpreting Chapter 19 can over-ride the City's confidentiality policy, we find that this is not an appropriate case to do that.

2. A further reason for non-public disclosure of the documents you have requested is that disclosure of such documents would interfere with the ability of a law enforcement agency to conduct thorough, confidential, internal investigations. Moreover, the Police Department's ability to gather statements from members of the Department or other departments would be seriously hampered by public disclosure of such investiga-

tions. Furthermore, disclosure would discourage victims and witnesses from providing information to the Department regarding personnel investigations.

3. Your request is further denied on the basis that disclosure of the documents you have requested would interfere with and hamper the City of Baraboo's ability to ensure employees an opportunity for satisfying careers and fair treatment based upon the value of their service and would impinge upon the City's right and opportunity to have an [sic] retain competent law enforcement personnel.

4. A further reason for nondisclosure of the documents requested is to protect the privacy rights of individuals who cooperated in the investigation, as well as Officer Hempel and Officer [____]. Disclosure of these records might subject witnesses, employees, and their families to increased risk of harassment or other jeopardy.

5. Nondisclosure of the records you have requested is further required in order to avoid a loss of morale. The City believes that disclosure would cause police officers to choose other employment because of the possible disclosure of personnel investigations. Thus, disclosure could inhibit the City's ability to hire and retain competent personnel.

6. It is possible that the documents requested may contain information that may be mistaken, unsubstantiated, untrue, or irrelevant, and there is a strong public policy in preventing this information from becoming public thereby causing undo [sic] personal and/or economic harm to the individuals involved. Accordingly, disclosure of

such information could damage the reputation of such individual and would constitute an unwarranted invasion of personal privacy of such individual.

In conclusion, when the public interest in protecting the foregoing policies is balanced against the public interest in providing public access to internal personnel investigations, the public interest to be served by the release of such documents does not out-weigh the countervailing interests that would be impacted by their release. Therefore, in my opinion, there is a strong public policy interest in non-disclosure. This balancing test is particularly relevant under the current facts where the City stated in its letter to Officer Hempel that the only reference to the [____] complaint in Officer Hempel's personnel file was the Chief's letter of August 11, 2000, and it was expressly stated in that letter that it was "intended to be documentary only and is not disciplinary." Thus, the internal investigation reports warrant a higher degree of protection from non-disclosure than reports in a matter involving discipline.

¶ 8. Hempel submitted another open records request on March 30, 2001 for documents and notes relating to a telephone interview between Kluge and Kelly Bluedorn, a witness in the Howver complaint investigation, and interviews conducted with other Baraboo officers. Kluge responded by letter on April 6, 2001 denying Hempel's open records request for the same reasons set forth in his March 13, 2001 letter to Attorney Halstead.

¶ 9. On June 11, 2001, Hempel filed a lawsuit against the City of Baraboo, the City of Baraboo Police Department, Sauk County and the Sauk County Sheriff's Department, alleging that their failure to provide him with the requested documents is a viola-

tion of Wisconsin's Open Records Law and demanding mandamus relief and attorney's fees and costs.[2] Both parties moved for summary judgment. The circuit court granted summary judgment to the City on November 13, 2002. Hempel appeals.

## DISCUSSION

¶ 10. Consideration of the proper application of the open records law involving the interpretation of statutes as applied to undisputed facts presents a question of law, which we review de novo. *See Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 164–65, 469 N.W.2d 638 (1991). The declared public policy of this state favors liberal access to public records "consistent with the conduct of governmental business."

> [I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

WIS. STAT. § 19.31. Wisconsin courts have long recognized the open records law "reflects the common law

---

[2] Sauk County and the Sauk County Sheriff's Department were dismissed from this action by stipulation.

principles favoring access to public records." *Wisconsin Newspress, Inc. v. Sheboygan Falls Sch. Dist.*, 199 Wis. 2d 768, 775, 546 N.W.2d 143 (1996) (citation omitted).

¶ 11. The Wisconsin Supreme Court, in construing Wis. Stat. § 19.31, has declared that "[T]he general presumption . . . is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential." *Wisconsin Newspress, Inc.*, 199 Wis. 2d at 776 (citation omitted). The third factor is implicated in this case.

¶ 12. The plain language of Wis. Stat. § 19.35(1)[3] directs the records custodian to consider the public policies expressed in Wis. Stat. § 19.85, among which is the expression of a general public policy against opening disciplinary or personnel proceedings, when making a decision whether or not to release a record. *Wisconsin Newspress, Inc.*, 199 Wis. 2d at 779. *See also Village of Butler v. Cohen*, 163 Wis. 2d 819, 829–30, 472 N.W.2d 579 (Ct. App. 1991). These sections do not state a "clear statutory exception" forbidding the release of all public employee disciplinary records. Rather, they simply require the records custodian to pay proper heed to the

---

[3] Wisconsin Stat. § 19.35(1) provides:

(1) Right to inspection. (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

expressed policies in allowing or denying public access to a personnel record. *Wisconsin Newspress, Inc.,* 199 Wis. 2d at 779.

■

¶ 13. However, there is no blanket exception under the open records law for public employee disciplinary or personnel records. *Id.* at 781–82. Whether personnel records are subject to disclosure must be examined on a case-by-case basis, which necessarily requires an *in camera* inspection. *State ex rel. Journal/Sentinel, Inc. v. Arreola,* 207 Wis. 2d 496, 510, 513, 558 N.W.2d 670 (Ct. App. 1996).

■■

¶ 14. We follow a two-step procedure in reviewing the instant case:

> First, we must decide if the trial court correctly assessed whether the custodian's denial of access was made with the requisite specificity. Second, we determine whether the stated reasons are sufficient to permit withholding, itself a two-step analysis. Here, our inquiry is: (1) did the trial court make a factual determination supported by the record of whether the documents implicate the public interests in secrecy asserted by the custodians and, if so, (2) do the countervailing interests outweigh the public interest in release.

*Wisconsin Newspress, Inc.,* 199 Wis. 2d at 784. We must determine whether the public policies favoring disclosure are outweighed by the public interest in nondisclosure. *See id.* at 781. We weigh each of the countervailing interests separately in applying the balancing test. *State ex rel. Journal/Sentinel, Inc.,* 207 Wis. 2d at 512.

¶ 15. Hempel does not challenge the specificity of the records custodian's response. We therefore turn to

the second step of the analysis which requires us to examine whether the interests asserted by the City in denying access to the requested records are outweighed by the public's interest in disclosure. *See Wisconsin Newspress, Inc.*, 199 Wis. 2d at 785.

¶ 16. Hempel first argues the circuit court failed to conduct a proper balancing test in this case when it determined the appropriateness of the City's refusal to disclose the investigation materials. We disagree. The circuit court conducted an *in camera* inspection of the City's investigative file and concluded that "*in this case* . . . the public's presumptive right to inspect public records is outweighed by the public interest in non-disclosure of an internal personnel investigation made as a result of a harassment complaint filed by a co-worker against a rank and file police officer." (Emphasis added.) We conclude the circuit court applied the balancing test to the facts as set forth in the materials contained in the City's investigative file.

¶ 17. Hempel further argues the circuit court accepted "carte blanche" the records custodian's reasons for nondisclosure without reference to specific facts in support thereof. We agree that some of the reasons provided by the records custodian are not supported by facts. However, we also agree that some of the reasons are well supported by facts and therefore support the records custodian's denial of Hempel's open records request.

¶ 18. The City states that disclosing the investigation reports would hamper the Department's ability to hire and retain competent law enforcement personnel and to provide an opportunity for satisfying careers in law enforcement; would lead to a loss of morale

within the Department and result in police officers choosing other employment; and, because the documents may contain inaccurate or irrelevant information, individuals involved in the investigation may face economic and/or personal harm by damaging the individual's reputation and invading their personal privacy. We are not persuaded these reasons justify withholding the requested information. First, the City fails to support these arguments with any facts and fails to demonstrate how this eventually would occur. Notwithstanding the circuit court's opinion that it is not necessary to present specific facts to support the City's concerns, a conclusory opinion by the records custodian that these things would eventually occur is inadequate. We conclude that the likelihood of such results is "too remote to overcome the policy favoring disclosure of public records." *State ex rel. Journal/Sentinel, Inc.*, 207 Wis. 2d at 517. Police officers must necessarily expect close public scrutiny. Furthermore, it is difficult to imagine a circumstance where an individual would be discouraged from becoming a law enforcement officer simply because he or she faces the possibility of having investigation records disclosed.

¶ 19. We do agree, however, that there are significant privacy issues at stake here. Wisconsin statutes and case law have consistently recognized the legitimacy of the interests of citizens to privacy. *Woznicki v. Erickson,* 202 Wis. 2d 178, 185, 549 N.W.2d 699 (1996). *See also Linzmeyer v. Forcey,* 2002 WI 84, ¶ 31, 254 Wis. 2d 306, 646 N.W.2d 811. The City justifies withholding records from the investigation file because this case involves an internal complaint of sexual harassment

resulting in a confidential investigation;[4] disclosure would interfere with and impede law enforcement's ability to conduct thorough and confidential internal investigations; disclosure would discourage victims and witnesses from providing information regarding personnel investigations; and it is necessary to shield victims and witnesses who cooperate with personnel investigations and their families from increased risk of harassment. We agree and conclude the court record contains sufficient evidence to support these reasons for nondisclosure.

¶ 20. We now consider whether the public policy of openness is outweighed by the public policy of nondisclosure. The City has, as have virtually all units of government, instituted a sexual harassment policy in order to comply with 29 C.F.R. § 1604.11(f), the federal regulation pertaining to discrimination based on sex issued by the federal Equal Employment Opportunity Commission (EEOC).[5] The circuit court found "The

---

[4] We agree that a government entity cannot escape the public policy imperatives of the open records law simply by adopting a blanket exception to the disclosure of public records under the guise of the label of confidentiality. The records custodian must conduct the proper balancing act as required by *Wisconsin Newspress, Inc. v. Sheboygan Falls School District*, 199 Wis. 2d 768, 777–78, 546 N.W.2d 143 (1996).

[5] EEOC has issued policy guidelines on implementing its sexual harassment regulations. It states:

An effective preventive program should include an explicit policy against sexual harassment that is clearly and regularly communicated to employees and effectively implemented . . . . The employer should also have a procedure for resolving sexual harassment complaints. The procedure should be designed to "encourage victims of harassment to come forward" and should not require a victim to complain first to the offending supervisor . . . . *It should*

City of Baraboo Police Department was concerned about protecting the privacy and reputational interests of its employees when it adopted a policy that provided upon receiving a complaint of harassment, the department would conduct a 'confidential' investigation of the alleged harassing activity." The circuit court further found

> [t]his confidentiality protection is necessary to encourage not only the person filing the complaint, but also those assisting in the investigation, from being harassed by other workers, members of the public, and to enable the department to gather statements from members of the department without interference from within our outside the department.

We conclude these reasons justify nondisclosure of the harassment complaint investigation file.

¶ 21. While we agree with the policy and purpose underlying the open records law, which is to provide the broadest possible access of the public to public records, the right to public access is not absolute. *Woznicki*, 202 Wis. 2d at 193–194. The public's right to access public records must give way to the important public policy of encouraging victims and witnesses of employment discrimination to cooperate in internal investigations of such conduct. The investigation of Officer Howver's complaint was undertaken pursuant to the City's anti-harassment policy, which promised a confidential inves-

---

*ensure confidentiality as much as possible and provide effective remedies, including protection of victims and witnesses against retaliation.* (Emphasis added.)

EEOC, *Policy Guidance on Current Issues of Sexual Harassment,* No. N-915–050, GUIDANCE E.1. (March 19, 1990), *available at* http://www.eeoc.gov/docs/currentissues.html.

tigation. Chief Lobe stated in his summary judgment affidavit that keeping such an internal investigation confidential "improves the likelihood of obtaining complete statements from witnesses within the department who are interviewed as part of the investigation." We conducted an *in camera* inspection of the records and agree with this conclusion. The records indicate some witnesses were afraid of retaliation should their statements be disclosed. One witness chose not to provide any information, presumably because of concerns of retaliation. These are but two excellent examples supporting the City's concerns about disclosing its investigation file.

¶ 22. The City's case for nondisclosure is strengthened by the release of documents from the investigation file with the names of witnesses and of the alleged victim redacted. The public's right to be informed about the workings of their government, and in this case, their police department, is well protected by the disclosure of the redacted documents. *Linzmeyer,* 254 Wis. 2d 306, ¶ 41. At the same time, the privacy interests of individuals are also protected.[6] Certainly should anyone, including the media, choose to question employees of the Baraboo Police Department regarding this investigation, they are free to do so. Likewise, any individual from the Baraboo Police Department is free to discuss the investigation with anyone else. The open records law does not erect a barrier to public discussion of these type of matters. By redacting the names from

---

[6] Hempel argues his interests are the only interests implicated here, a claim easily discarded by a brief examination of the redacted documents released by the City. Certainly the alleged victim and witnesses who face the possibility of retaliation have interests affected by the decision to release the documents.

the disclosed documents, the City acted beyond the balancing requirements of the open records law.

¶ 23. We conclude the public's interest in nondisclosure outweighs the public's interest in access to records containing information from internal police department complaints of sexual and other forms of harassment proscribed by law.[7]

*By the Court.*—Order affirmed.

¶ 24. DYKMAN, J. (*dissenting*). Discrimination is an evil that has been vigorously attacked by the Wisconsin Legislature. To combat discrimination in employment, the legislature enacted Wis. Stat. § 111.31(1) (2001–02),[1] which provides, in pertinent part:

> **Declaration of Policy.** (1) The legislature finds that the practice of unfair discrimination in employment against properly qualified individuals by reason of their age, race, creed, color, disability, marital status, *sex,* national origin, ancestry, sexual orientation, arrest record, conviction record, membership in the national guard, state defense force or any other reserve component of the military forces of the United States or this state or use or nonuse of lawful products off the employer's premises during nonworking hours substantially and adversely affects the general welfare of the state. Employers, labor organizations, employment agencies and licensing agencies that deny employment

---

[7] Hempel offers a third objection to the circuit court's decision, arguing that the circuit court failed to examine whether "exceptional circumstances" supported disclosure of the documents. Hempel asserts this conclusion without legal analysis. We may decline to review an issue inadequately briefed. *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

opportunities and discriminate in employment against properly qualified individuals solely because of their age, race, creed, color, disability, marital status, sex, national origin, ancestry, sexual orientation, arrest record, conviction record, membership in the national guard, state defense force or any other reserve component of the military forces of the United States or this state or use or nonuse of lawful products off the employer's premises during nonworking hours deprive those individuals of the earnings that are necessary to maintain a just and decent standard of living.

(Emphasis added.)

¶ 25. To emphasize this policy, the legislature enacted WIS. STAT. § 111.31(2), which provides in pertinent part:

It is the intent of the legislature to protect by law the rights of all individuals to obtain gainful employment and to enjoy privileges free from employment discrimination because of age, race, creed, color, disability, marital status, *sex* . . . .

(Emphasis added.)

¶ 26. Unfortunately, despite this strong policy the majority has concluded that a police department may hide from the public, evidence of sex discrimination within the City of Baraboo Police Department. I do not agree that this extension of open records exceptions into an area particularly suited to openness is the correct interpretation of the law or policy encompassed by Wisconsin's open records legislation.

¶ 27. First, I am impressed by the legislature's command and the judiciary's response to that command. WISCONSIN STAT. § 19.31 provides for openness, not secrecy:

**Declaration of policy.** In recognition of the fact that a representative government is dependent upon an

informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

¶ 28. This is not an exceptional case. In fact, it is a mine-run case, in which a police department does not want to reveal evidence of the sex discrimination going on within the department, or what steps the department has taken to insure that the policy of Wisconsin's anti-discrimination statute is being followed. That is understandable. Government does not like to be embarrassed by its mistakes, and secrecy can hide those mistakes from public scrutiny. The open records law, however, is designed to make this sort of information public.

¶ 29. Wisconsin's courts have recognized the legislative policy of openness. In *Hathaway v. Green Bay School Dist.*, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984), the court examined previous open records cases and concluded:

Section 19.21, Stats., in light of prior cases, must be broadly construed to favor disclosure. Exceptions should be recognized for what they are, instances in derogation of the general legislative intent, and should,

therefore, be narrowly construed; and unless the exception is explicit and unequivocal, it will not be held to be an exception.

We are to give much weight to the beneficial public interest in open records. *State ex rel. Bilder v. Delavan Tp.*, 112 Wis. 2d 539, 553, 334 N.W.2d 252 (1983). In *Newspapers Inc. v. Breier*, 89 Wis. 2d 417, 433, 279 N.W.2d 179 (1979), the court noted: "This court has consistently held that, in the process of balancing policy considerations favoring secrecy for whatever reason against those favoring the public's right of inspection, the public interest in open public records weighs heavily in every case."

¶ 30. So, with the legislature and the courts emphatically favoring openness in government, why has the majority voted for secrecy? First, the majority holds that "privacy issues" support keeping the information secret. But the supreme court has addressed that: "Although it must be conceded that the public interest in the protection of the reputations of individuals is not an insubstantial concern, that interest must be measured against the strong public interest which favors the right of inspection of public records." *Newspapers Inc.*, 89 Wis. 2d at 438. The majority then focuses on a supposed effect of making discrimination complaints public: the victims might not come forward with information. But, as the majority notes, even when promised secrecy, an informant refused to give up information. Reluctant witnesses are an everyday occurrence in court proceedings. Wisconsin's response to that problem is our "John Doe" procedure, under which persons reluctant to divulge information about crimes are forced to tell what they know while under oath.[2]

---

[2] *See* Wis. Stat. § 968.26.

Subpoenas are another method by which information can be obtained from those not inclined to divulge information at hearings or trials.

¶ 31. The important concept that the majority misses is this: If public employers are permitted to hide evidence of discrimination, we will never be able to overcome that discrimination. While a concern for the privacy of individuals is laudatory, the legislative purpose of ending discrimination will never be achieved if public employers are allowed to sweep evidence of discrimination under the rug and then successfully resist attempts to focus public opinion on the very evil the legislature has made unlawful. In my view, the short-term embarrassment and unsubstantiated fear of reprisal weighs like a feather against the long-term permission the majority has given government to hide evidence of discrimination.

¶ 32. Next, the majority holds that the open records request could be denied because the police department released the information, with only the names of witnesses and the victim redacted. I have made an exhibit of one of the redacted documents. To me, it reveals little more than nothing. The very information necessary to an inquiry into discrimination in the Baraboo Police Department has been censored. I am not convinced by a document such as this.

¶ 33. Nor am I convinced by the majority's citation to *Linzmeyer v. Forcey*, 2002 WI 84, ¶¶ 14–15, 254 Wis. 2d 306, 646 N.W.2d 811. The cited portion of the case says nothing about redaction, and nothing in the case supports the conclusion that the public's right to know is well protected by disclosing redacted documents. What *Linzmeyer* really teaches is that the privacy interest of a public school teacher accused of inappropriate behavior with a number of his female

students is an insufficient reason to keep secret the report of an investigation into that behavior, even when, as in the case of the Baraboo Police Department, no arrest, prosecution or administrative disciplinary action ensued. *Linzmeyer* is the authority for requiring the Baraboo Police Department to give up the withheld information.

¶ 34. The majority notes that the media can question members of the Baraboo Police Department so as to publicize the issue of discrimination. Were this a reason to deny open records requests, all open records requests could be denied. After all, the media can question anyone about anything. The problem the majority misses is that the open records statutes do not require anyone to talk. An explanation that records can be kept secret because employees will be afraid to talk does not square with an explanation that records can be kept secret because the media can ask questions of those very employees.

¶ 35. There was no need for the precedent set by the majority's opinion here. The Baraboo Police Department will continue to operate whether or not it can keep internal evidence of discrimination secret. Police Department employees will survive and continue their employment whatever we do. But henceforth police departments as well as other government agencies can use the possible privacy concerns of their employees to shield themselves from discrimination investigations. I cannot agree with the balance the majority has struck. I therefore respectfully dissent.

EXHIBIT 61

County of Sauk
## SHERIFF'S OFFICE

Date of Complaint: February 10, 2000

Complainant: ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### NARRATIVE

On February 9, 2000 I had a conversation with ▮▮▮▮ as ▮ met with ▮▮▮▮ briefed us on a conversation that he had with ▮▮▮▮▮▮ advised that ▮▮▮▮▮ requested permission to speak with ▮▮▮▮ identified ▮▮▮▮ did not identify the ▮▮▮ officer involved in their investigation ▮▮▮▮▮▮▮ said that ▮ was advised ▮▮▮▮ that two of our supervisor have been advised of this complaint but have done nothing about it.

I was assigned to speak with ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮ was assigned to speak ▮▮▮▮▮▮

At 11:05PM on I met with ▮▮▮▮▮▮▮▮ after ▮ reported for work at ▮▮▮ and ▮ got ▮ things squared away. After ▮ asked if ▮ was in trouble I explained to ▮ that I received information within the last twenty-four hours or so that ▮ may have suffered some harassment by one of the Baraboo Police Department officers. After a little explaining ▮▮▮ advised that ▮ does now know what I was talking about. ▮▮▮ advised that it happened shortly after ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Present during the incident were ▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮ advised that the incident took place in the ▮▮▮▮▮ said that ▮▮▮ was talking to ▮ and made the following statements, "Women are brainless. Women should not be working in police work." and "Women should not be working at all." ▮ said that when ▮ heard that and while ▮▮▮ was walking out of the ▮▮▮▮▮▮▮▮▮ told ▮ was a "pompous ass". ▮▮▮ said that ▮ came back into the ▮ and asked what ▮ said and ▮ said ▮ told ▮ that ▮ was a "pompous ass" and told ▮ to get out of t ▮▮▮▮▮▮▮▮▮ said that this was the first time ▮ had ever met or seen ▮ even though the statements did not appear to be directed towards

558