LOCAL 2489, AFSCME, AFL-CIO, and John Does 1-13, Plaintiffs-Appellants,

v.

ROCK COUNTY and Eric A. Runaas, Defendants-Respondents,

BLISS COMMUNICATIONS, INC. d/b/a The Janesville Gazette, Intervenor-Respondent.

Court of Appeals

*No. 03–3101. Submitted on briefs April 22, 2004.—Decided October 7, 2004.*

2004 WI App 210

(Also reported in 689 N.W.2d 644.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Bruce F. Ehlke* and *Danielle L. Carne* of *Shneidman, Hawks & Ehlke, S.C.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas A. Schroeder*, corporation counsel, Janesville.

On behalf of the intervenor-respondent, the cause was submitted on the brief of *Thomas J. Basting, Sr.* and *Margery Mebane Tibbetts* of *Brennan, Steil, Basting, S.C.*, Janesville.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. DEININGER, P.J. Local 2489 of AFSCME, AFL-CIO, and thirteen of its members appeal an order that dismissed their complaint seeking to enjoin the Rock County Sheriff from releasing certain records pursuant to an open records request from The Janesville Gazette. The union[1] claims that the trial court should have enjoined the release of the records because

---

[1] For convenience, we will refer to the appellants collectively as "the union."

<br>

they relate "to the current investigation of . . . possible misconduct connected with employment by an employee," WIS. STAT. § 19.36(10)(b),[2] and thus the sheriff may not provide the public access to them. The union also claims that, even if the records do not fall within the statutory exception from disclosure, the trial court erred in concluding that the public interest in their disclosure outweighed the public interest in protecting the reputational and privacy interests of the employees in this case. We reject both arguments and affirm the appealed order.

## BACKGROUND

¶ 2. In response to the supreme court's holdings in *Milwaukee Teachers' Education Association v. Milwaukee Board of School Directors*, 227 Wis. 2d 779, 596 N.W.2d 403 (1999), and *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996), the legislature last year enacted 2003 Wis. Act 47. *See* Joint Legislative Council Prefatory Note to 2003 Wis. Act 47. The act provides, among other things, that if a public authority decides to release certain employee-related records to someone who has requested access to them under WIS. STAT. § 19.35, before doing so, the authority must give notice to the "record subject," who may then commence an action in circuit court to prevent their release. *See* WIS. STAT. § 19.32(2g) (defining "record subject" as "an individual about whom personally identifiable information is contained in a record"); WIS. STAT. § 19.356 (prescribing procedures for a record subject to bring an action to enjoin release of the records).

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version, as affected by 2003 Wis. Act 47, unless otherwise noted.

¶ 3. The types of records which trigger the notice and right-of-action provisions of Wis. Stat. § 19.356 include the following:

> A record containing information relating to an employee that is created or kept by the authority and that is the result of an investigation into a disciplinary matter involving the employee or possible employment-related violation by the employee of a statute, ordinance, rule, regulation, or policy of the employee's employer.

Wis. Stat. § 19.356(2)(a)1. If a record subject commences an action under § 19.356(4) to restrain the intended release of records, the requester of the records may intervene in the action, as The Janesville Gazette has done here. When deciding whether to enjoin the release of records to a requester, the circuit court "shall apply substantive common law principles construing the right to inspect, copy, or receive copies of records in making its decision." Section 19.356(6). The statute prohibits release of the requested records during the pendency of the action, including any appeals of an adverse decision by the record subject. Section 19.356(5).

¶ 4. In addition to establishing notice and right-of-action provisions relating to certain employee-related records, 2003 Wis. Act 47 also created several new statutory exceptions to the general requirement for public access to public records. Pertinent here is a new exception for "[i]nformation relating to the current investigation of a possible criminal offense or possible misconduct connected with employment by an employee prior to disposition of the investigation." Wis. Stat. § 19.36(10)(b). If a record falls within this exception from disclosure, "an authority shall not provide access" to the record, regardless of the public interests

weighing in favor of disclosure. Section 19.36(10); *see also* Joint Legislative Council Prefatory Note to 2003 Wis. Act 47 (explaining that the act creates a category of "[e]mployee-related records that are absolutely closed to public access under the open records law").

¶ 5. The Rock County Sheriff notified thirteen employees of his department that, based on an investigation of their conduct, they would be disciplined for "using Department computers to view inappropriate internet images." Three were discharged and ten received written reprimands. At about this same time, The Janesville Gazette sent an open records request to the sheriff seeking "copies of reports generated by internal or criminal investigations resulting in disciplinary action" against department employees during the relevant time frame. The sheriff notified each of the employees of his intended action in response to the Gazette's request:

> As the investigation is complete and disposed of with [the termination of employment/written reprimand], I believe the reports may be accessed by the media pursuant to § 19.36(10)(b), Wis. Stats. However, in performing the required balancing tests I have determined that the public interest in your privacy and reputational interests outweighs the public interest in the release of your identity. Therefore, I have decided that prior to the release of the reports your name and any other identifying information will be redacted.

¶ 6. The sheriff's notices to the affected employees also informed them of their right under WIS. STAT. § 19.356 to commence an action to prevent the release of the records in question. They did so, joined by their union, Local 2489, AFSCME, AFL-CIO, naming Rock County and the Rock County Sheriff as defendants. The Janesville Gazette intervened. The employees and the

union argued that, because they had filed grievances pursuant to their collective bargaining agreement with the county regarding the discipline imposed by the sheriff, the "investigation" into their alleged misconduct had not been completed. They also argued that, even if the exception for records of "current investigation[s]" under Wis. Stat. § 19.36(10)(b) did not apply, public interest considerations weighed against releasing these records. The circuit court concluded that the relevant investigation was completed and that the public interest in disclosure outweighed any public interest in protecting the privacy of the affected employees. Accordingly, the court entered an order denying the requested injunction and dismissing the complaint.

## ANALYSIS

¶ 7. The union's first argument requires us to interpret Wis. Stat. § 19.36(10)(b) and thus presents a question of law that we decide de novo. *Hempel v. City of Baraboo*, 2003 WI App 254, ¶ 10, 268 Wis. 2d 534, 674 N.W.2d 38, *review granted*, 2004 WI 20, 269 Wis. 2d 197, 675 N.W.2d 804 (WI Feb. 24, 2004) (No. 03–0500). Whether the public interest in disclosure of public records is outweighed by a competing public interest in keeping certain records confidential is also an issue we decide independently, owing no deference to the circuit court's conclusion. *Kraemer Bros., Inc. v. Dane County*, 229 Wis. 2d 86, 95, 599 N.W.2d 75 (Ct. App. 1999).

¶ 8. The union argues that the investigation into the employees' alleged misconduct had not been concluded when the sheriff decided that redacted copies of the records could be released to The Janesville Gazette. Thus, according to the union, the records are covered by the statutory exception for records of a "current inves-

tigation" of possible employee misconduct "prior to disposition of the investigation," as set forth in Wis. Stat. § 19.36(10)(b). Accordingly, the union contends that the sheriff had no authority to grant access to these records, rendering any balancing of public interests irrelevant.

¶ 9. The union acknowledges that the sheriff's own investigation of the employee's conduct had concluded, resulting in the employees receiving discipline. It argues, however, that the filing of grievances had the effect of prolonging the investigation of the employee's conduct, which it asserts is "an ongoing process that continues until there has been a final disposition at the conclusion of the grievance-arbitration process," pursuant to its collective bargaining agreement with the county. Specifically, the union argues:

> A full and fair investigation, involving both the employer and the Union that represents the employees, is essential to the grievance-arbitration process. The resolution of a grievance entails conferring with individuals, gathering and reviewing documents and other information, performing research and weighing and evaluating evidence. All of this investigatory activity is important and necessary, if there is going to be an informed and fair disposition of the pending grievances. In order to maintain the integrity of this process, and as provided for at Sec. 19.36(10)(b), Wis. Stat., the confidentiality of the investigation should be protected until there has been a final disposition of the grievances.

█

¶ 10. The union's argument thus requires us to determine whether the terms "investigation" and "disposition of the investigation" as employed in Wis. Stat. § 19.36(10)(b) can be interpreted so broadly as to encompass the entire grievance resolution process

through its completion. The trial court concluded that the terms could not be read so expansively and that the only "investigation" that triggers the exception is one "conducted by the public entity that's involved in the case, [here] the sheriff's department," not one conducted by the record subject or his or her representative, or by some third party as a follow-up to or result of the public authority's investigation. We agree.

█

¶ 11. The Wisconsin Supreme Court has recently instructed courts on how to proceed when interpreting a statute:

> We assume that the legislature's intent is expressed in the statutory language .... Thus ... statutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning. Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage. If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning ....

State ex rel. *Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶¶ 44–46, 271 Wis. 2d 633, 681 N.W.2d 110 (citations, quotation marks and paragraph breaks omitted). To this general standard for interpreting statutes,

we must add the specific guidance that has evolved in the common law regarding interpretation of the Wisconsin Open Records Law: given the legislative declaration of policy in WIS. STAT. § 19.31 that establishes "a presumption of complete public access,"[3] the language of a statutory exception to public access should always be construed as narrowly as possible. *See Chvala v. Bubolz*, 204 Wis. 2d 82, 88, 552 N.W.2d 892 (Ct. App. 1996).

¶ 12. No definition of "investigation" or "disposition of the investigation" is provided in either WIS. STAT. § 19.36 itself, or in WIS. STAT. § 19.32, which defines certain terms for purposes of WIS. STAT. §§ 19.33 through 19.39. The introductory language of § 19.36(10) sheds some light on the meaning of these terms, however, in that it allows the release of records excepted from public disclosure by the subsection to "an employee" or to a "recognized or certified collective bargaining representative to the extent required to fulfill a duty to bargain . . . pursuant to a collective bargaining agreement." Section 19.36(10). If "investigation" as used in § 19.36(10)(b) were meant to include

---

[3] WISCONSIN STAT. § 19.31 declares that "it is . . . the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." To that end, WIS. STAT. §§ 19.32 to 19.37 "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 49 n.8, 271 Wis. 2d 633, 643 N.W.2d 466 ("A plain meaning, text-based approach to statutory interpretation certainly does not prohibit the interpretation of a statute in light of its textually manifest scope, context, or purpose.").

investigations conducted by employees themselves, or by unions incident to grievance resolution processes under a collective bargaining agreement, this language would not seem necessary, or, at a minimum, would be worded differently. We conclude that this exception to the exception under § 19.36(10)(b) supports an interpretation that the "investigation" referred to is that conducted by the public employer.

¶ 13. We also note, as does The Janesville Gazette, that certain procedural requirements under WIS. STAT. § 19.356, enacted at the same time that the legislature created the exception under WIS. STAT. § 19.36(10)(b), indicate that the public's access to governmental records is not to be unduly delayed. If an employee exercises the right to challenge the release of a record proposed for release to a requester, the employee must do so within ten days of receiving notice of the authority's intention to release the records. Section 19.356(4). The circuit court must decide the issue within ten days of the employee's filing and service of the summons and complaint, but for cause may extend the time for no more than thirty days. Section 19.356(7). Any appeal of the circuit court ruling must be commenced within twenty days, and we are to "grant precedence to the appeal over all other matters not accorded similar precedence by law." WIS. STAT. §§ 19.356(8) and 808.04(1m).

¶ 14. We agree with the Gazette that the language of WIS. STAT. § 19.356 evinces a legislative intent that public records be promptly disclosed to a requester, even if their release is challenged by an employee. Reading WIS. STAT. § 19.36(10)(b) to preclude the release of records until any grievance arbitration or other review proceedings initiated by the employee have run their course would permit the employee to create pro-

longed delays in the release of the requested records. Thus, read in the context of a closely related statute, the "investigation" and "disposition of the investigation" cannot reasonably be read to extend to the progress and completion of grievance arbitration as the union contends. *See State ex rel. Kalal*, 271 Wis. 2d 633, ¶ 46 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").

■

¶ 15. We conclude that, in keeping with the mandate for narrow construction of excepting language, the term "investigation" in § 19.36(10)(b) includes only that conducted by the public authority itself as a prelude to possible employee disciplinary action. We also conclude that an authority's investigation achieves its "disposition" when the authority acts to impose discipline on an employee as a result of the investigation, regardless of whether an employee elects to pursue grievance arbitration or another review mechanism that may be available under applicable statutes, ordinances, regulations or a collective bargaining agreement.[4]

---

[4] Here, of course, it is relatively easy to conclude that the investigation reached its "disposition" because the sheriff concluded employee misconduct had occurred and imposed discipline accordingly. A similar discrete ending point, or "disposition," of an investigation into "a possible criminal offense or possible misconduct connected with employment" may not be as easy to discern when the investigation fails to substantiate a basis for the filing of criminal charges against an employee or the imposition of discipline by a public employer. We need not, and thus do not, decide when an investigation that does not result in such actions has reached its disposition.

¶ 16. We also reject the union's reliance on WIS. STAT. § 19.35(1)(am) to support its claim that the exception to disclosure under WIS. STAT. § 19.36(10)(b) applies throughout grievance arbitration proceedings. That paragraph grants an "individual," or someone "authorized by the individual," the right to inspect and copy "any record containing personally identifiable information pertaining to the individual that is maintained by an authority." This right is "[i]n addition to any right" of public access under the general open records requirement of § 19.35(1)(a), but this expanded right of access granted to certain individuals does *not* apply to, among other things:

> Any record containing personally identifiable *information* that is *collected* or maintained *in connection with* a complaint, *investigation* or other circumstances *that may lead to an enforcement action, administrative proceeding, arbitration proceeding or court proceeding, or any such record that is collected or maintained in connection with such an action or proceeding.*

Section 19.35(1)(am)1 (emphasis added). The union relies on the emphasized language to argue that it demonstrates that a "current investigation" under WIS. STAT. § 19.36(10)(b) must be interpreted to continue throughout grievance arbitration. We disagree.

¶ 17. WISCONSIN STAT. § 19.35(1)(am), as applied here, would grant additional access rights, over and above those of the public, to the employees to inspect and copy documents maintained by the sheriff that pertain to them. The exception in subsection 1 permits the sheriff, if he chooses, to refrain from disclosing to the employees any materials "collected or maintained" in an investigation "that may lead to" litigation, administrative proceedings or arbitration. Presumably, an

223

employee's right, if any, to discover materials collected or prepared by the authority as a prelude to litigation, arbitration or administrative proceedings, would be governed by the rules pertaining to the review proceeding in question. Section 19.35(1)(am) thus simply permits a public employer to deny access to what is, in effect, a potential adversary in litigation or other review proceedings, unless or until required to do so under the rules governing parties to the proceeding.

¶ 18. Unlike WIS. STAT. § 19.36(10)(b), WIS. STAT. § 19.35(1)(am) does not mandate nondisclosure. The sheriff has decided that, except for the employees' names, the interests of the public in disclosure of these records outweigh any competing considerations, including perhaps placing himself or the county at some disadvantage in the ensuing grievance arbitrations. The sheriff's decision to forgo any opportunity that may exist to justify the denial of access to the investigation reports from the public or the employees because of impending litigation or arbitration renders the language of § 19.35(1)(am)1 inapplicable to the present dispute. We conclude that § 19.35(1)(am)1, which involves an employee's right of access to an employer's records involving him or her, does not serve to inform us as to the meaning of "investigation" or "disposition of the investigation" as those terms are used in WIS. STAT. § 19.36(10)(b), an exception to the public's right of access to government records.

¶ 19. Finally, the union makes what appears to be a slightly different argument by distinguishing its own investigation into the alleged misconduct from what it claims is the sheriff's duty to continue his investigation during a grievance arbitration proceeding. The union argues that, even if the grievance–related investiga-

224

tions conducted by the employees or the union do not prevent the "investigation" from having reached its "disposition" under WIS. STAT. § 19.36(10)(b), the sheriff also has a duty under the grievance resolution provisions of the parties' collective bargaining agreement to pursue his own investigation until the grievances are finally disposed of. Put another way, the union again argues that the sheriff's "investigation" remains a "current" one until such time as the thirteen grievances reach their final disposition. Again, we disagree.

¶ 20. We have examined the grievance procedure contained in the union's collective bargaining agreement with the county, which the union attached to its complaint, and we find no express requirement that the sheriff must continue to "investigate" after a grievance is filed regarding discipline imposed. The sheriff undertook the investigation of possible employee misconduct within his department, completed it and imposed discipline on thirteen employees. The fact that the sheriff is now obliged to defend his action before an arbitrator does not render the records generated during the prior, completed investigation immune from disclosure to the public under WIS. STAT. § 19.36(10)(b). If, in preparing his defense of his disciplinary actions, the sheriff collects additional information or generates additional records, public access to these new items might arguably be prohibited under the exception in question or another one. That possibility, however, does not alter the status of the records currently at issue.

¶ 21. Having concluded that the sheriff was not precluded by WIS. STAT. § 19.36(10)(b) from releasing the records of his completed investigations into possible employee misconduct, we now consider whether the trial court correctly concluded that the public interest

225

in disclosure was not outweighed by any public interest in their nondisclosure. Even when no statutory exception to the open records law precludes the release of a record, an overriding public interest in keeping certain records confidential may overcome the general presumption in favor of public access, thereby permitting an authority to deny access to a requester. *See Hathaway v. Joint School Dist. 1, City of Green Bay*, 116 Wis. 2d 388, 396–97, 342 N.W.2d 682 (1984). In order to determine whether such an interest exists on the present facts, we, like the trial court, must "apply substantive common law principles construing the right to inspect . . . records" in deciding whether the sheriff should be enjoined from releasing the investigative records in question. Wis. Stat. § 19.356(6).

¶ 22. The union argues that "reputation and privacy concerns . . . represent one of the primary reasons for withholding records from public inspection," and it relies heavily on the supreme court's decisions in *Woznicki* and *Milwaukee Teachers' Education Association* to support this argument.[5] We acknowledge that a

---

[5] The Janesville Gazette asserts that the union argues "for the first time on appeal that the investigatory records should never be released." The Gazette maintains that, because the union sought in the trial court to enjoin the release of the records only during the pendency of grievance arbitration proceedings, it should not be allowed to advance arguments on appeal that the records should remain confidential on a permanent basis. We first note that the union's position in the circuit court is more accurately characterized as arguing for the imposition of immediate restraint on the release of any and all records relating to the employee misconduct investigations, and, upon completion of the grievance arbitration processes, a judicial determination of which records or parts of those records should be released. In any event, because we conclude that the exception under Wis. Stat. § 19.36(10)(b) for records of ongoing

public interest may be found in protecting the reputations of citizens. *See Armada Broadcasting, Inc. v. Stirn*, 183 Wis. 2d 463, 475, 516 N.W.2d 357 (1994) (" 'Protection of a citizen's good name is a proper concern of the state.' "). We conclude, however, that the union misapplies the holding in these and similar cases.

¶ 23. The supreme court ruled in *Armada* that a teacher must be allowed to intervene as a matter of right in an action by a requester to compel disclosure of an investigative report concerning sexual harassment charges against the teacher. *Id.* at 467. The court was careful to explain, however, that its decision "does not influence whether the record should remain closed. Moreover, it does not grant [the teacher] the ability to close the record. We are simply determining whether [the teacher] may intervene for the purpose of being able to offer reasons to the court why the record should remain closed." *Id.* at 473.

¶ 24. Similarly, both *Woznicki* and *Milwaukee Teachers' Education Association* cite privacy and reputational interests as reasons to allow the subject of a record to have a court review an authority's decision to release certain records that might harm those interests. *Woznicki*, 202 Wis. 2d at 193 (involving district attorney's intended release of personnel and telephone records gathered in a criminal investigation); *Milwaukee Teachers' Educ. Ass'n*, 227 Wis. 2d at 798 (concluding that de novo judicial review must be available whenever an authority proposes to release a public

investigations does not apply, and further that no public policy interests cited by the union outweigh the public interest in access to these records regardless of the pending grievances, the records will be released to the requester. Our disposition obviates the need to draw any distinction between the present and future status of the records.

employee's personnel records). In both, however, as in *Armada*, the court emphasized that the right to seek review did not equate to a right to prohibit disclosure based on privacy or reputational interests. *Woznicki*, 202 Wis. 2d at 195 (noting that there is no "blanket exception" for personnel records, and that the "records are open to the public unless there is an overriding public interest in keeping the records confidential"); *Milwaukee Teachers' Educ. Ass'n*, 227 Wis. 2d at 799 (remanding so that the circuit court could perform "the balancing test required by law" to determine whether the records should be released).

¶ 25. As we have explained, the right of a public employee to obtain de novo judicial review of an authority's decision to allow public access to certain records is now granted by WIS. STAT. § 19.356. We conclude that the statutory right to judicial review provided in § 19.356 is no broader than the common law right recognized in *Woznicki* and *Milwaukee Teachers' Education Association*. That is, it is a right to obtain de novo judicial review, not a right to prevent disclosure solely on the basis of a public employee's privacy and reputational interests.

¶ 26. Thus, the public's interest in not injuring the reputations of public employees must be given due consideration, but it is not controlling. When individuals become public employees, they necessarily give up certain privacy rights and are subject to a degree of public scrutiny. *See Wisconsin Newspress, Inc. v. School Dist. of Sheboygan Falls*, 199 Wis. 2d 768, 786–87, 546 N.W.2d 143 (1996). This is especially true when they are employed in a law enforcement capacity. *Hempel*, 268 Wis. 2d 534, ¶ 18 ("Police officers must necessarily

expect close public scrutiny."); *State ex rel. Journal/Sentinel, Inc. v. Arreola*, 207 Wis. 2d 496, 515, 558 N.W.2d 670 (Ct. App. 1996) ("As a result of their public employment, police officers have a lower expectation of privacy."). Although the employees in this case are apparently not "police officers," they are nonetheless public employees of a law enforcement agency whose expectations regarding privacy and public scrutiny we regard as similar.[6]

¶ 27. We thus conclude that the public interest in protecting the privacy and reputations of the employees in this case is not a compelling one that would, by itself, override the strong public interest in obtaining information regarding their activities while on duty. As in *Linzmeyer v. Forcey*, 2002 WI 84, 254 Wis. 2d 306, 646 N.W.2d 811, the misconduct in this case "allegedly occurred in the location where the public has entrusted [the employees] to work and during the performance of [their] public duties, and therefore should be more subject to public scrutiny." *Id.*, ¶ 28. We note as well that, although the union discounts the protection afforded, the sheriff proposes to release the reports of his completed investigation with the names of the disciplined employees redacted, a measure which in itself will afford some protection to the asserted interests.[7]

[6] The complaint does not disclose the positions held by the thirteen "John Doe" plaintiffs but simply identifies them as former or current employees of the Rock County Sheriff's Department. The collective bargaining agreement attached to the complaint specifies that Local 2489 includes "non-deputized employees of the Rock County Sheriff's Department."

[7] The Janesville Gazette has not argued here or in the circuit court that the sheriff has improperly chosen to redact the names. We question whether it could do so in the present proceeding brought by the employees and their union under

229

¶ 28. The union has not asserted, nor do we find present in this case, any of the other privacy-related public interests that have, in other cases, been determined to weigh heavily against disclosure of investigative records such as these. For example, when the release of public records would jeopardize both the "personal privacy" and "safety" of an employee, nondisclosure is justified. *State ex rel. Ledford v. Turcotte,* 195 Wis. 2d 244, 250–51, 536 N.W.2d 130 (Ct. App. 1995). Similarly, records pertaining to internal investigations may properly be withheld from the public when they are the result of a confidential investigation and disclosure of the record would discourage future victims or witnesses from providing information of wrongdoing. *Hempel,* 268 Wis. 2d 534, ¶ 20. The union makes no similar claims regarding the internal investigation into the employees' misuse of department computers in this case.

¶ 29. Finally we address the union's argument that release of the records should, at a minimum, await the completion of the grievance arbitration process, lest public knowledge of the details of the internal investigation of computer misuse taint that process. The union essentially asserts that disclosure prior to the termination of grievance arbitration proceedings will contravene the public interest in the fair resolution of

Wis. Stat. § 19.356, in which the only issue is whether the sheriff may release what he proposes to release. Whether an intervening requester may request mandamus by way of a cross-claim in a § 19.356 action, or must instead commence a separate action under Wis. Stat. § 19.37(1) for the release of partially withheld information that the requester believes to have been wrongly withheld, is not before us in this appeal.

public employee grievances. Specifically, it posits that potentially favorable witnesses, county officials and even representatives of the union itself will be unable to fairly and fully participate in the grievance resolution process because of public disapproval of the disciplined employees' conduct. That is, in the union's view, those involved in processing or attempting to resolve the grievances will not want to be seen by the public as "soft on porn[ography]" by opposing the sheriff's disciplinary actions or by settling the grievances on a "reasonable" basis. It also asserts that release of these records before arbitration has run its course serves no public interest save The Janesville Gazette's desire to provide the public with accounts of "titillating material,"[8] which the union again asserts will only serve to interfere with the union's efforts to obtain a "fair and reasonable" resolution of the pending grievances.

---

[8] The records proposed to be released are not in the record on appeal. A union officer avers in an affidavit that the employees were disciplined for using department "computer equipment searching for or viewing pornographic material." Counsel for the sheriff told the circuit court during argument that "[c]opies of the actual material that was looked at have been downloaded. There's color copies of all of it." The union does not argue that the trial court erred in conducting the public interest balancing test based on the parties' characterizations of what is contained in the records rather than by viewing the records themselves in camera. Neither does it argue that we are precluded from weighing the competing interests without having the records at issue before us. We note that an appellant has the duty to ensure that the record is sufficient to review the issues raised on appeal, and in the event that relevant materials are not included in the record, we will assume that they support the trial court's ruling. *See State Bank of Hartland v. Arndt,* 129 Wis. 2d 411, 423, 385 N.W.2d 219 (Ct. App. 1986).

231

¶ 30. We reject any notion that the reports of the sheriff's investigations of employee misconduct must remain secret during grievance arbitration in order to ensure that the employees are fairly treated by other participants in the grievance arbitration process. If that proposition were true, then all criminal complaints should be sealed and pretrial proceedings conducted outside of public view because the public also takes a dim view of criminal conduct. The fact that the public is often repulsed by the details of conduct described in criminal complaints does not inhibit defense attorneys from zealously defending their clients, judges from assembling impartial juries or prosecutors from negotiating "fair" plea bargains in appropriate cases. And, if an employee believes that an arbitrator's decision in his or her case was the product of the arbitrator's obeisance to public opinion, the employee is not without recourse. *See* Wis. Stat. § 788.10 (providing that a court "must make an order vacating the [arbitration] award" if it was "procured by . . . undue means," "there was evident partiality . . . on the part of the arbitrators," or the arbitrators engaged in "any other misbehavior" prejudicing the rights of a party to the arbitration).

¶ 31. Thus, we conclude that the union has not established any genuine public interest in keeping the records in question away from public view, beyond the generalized interest in not injuring the reputation or privacy interests of any citizen. As in most other instances where that generalized interest is weighed against the overriding public interest in obtaining information regarding the activities of public servants, it quickly yields to the greater weight of the latter interest. The supreme court had little difficulty concluding in *Linzmeyer* that a public school teacher had not shown there to be a public interest in maintaining the

confidentiality of a report regarding the investigation by police of his alleged "inappropriate statements to, and . . . inappropriate conduct with, a number of his female students" sufficient to "overcome the presumption of openness." *Linzmeyer*, 254 Wis. 2d 306, ¶¶ 4, 25. Similarly, we have previously determined that the public's interest in being apprised of misconduct on the part of correctional officers at a state prison outweighed their interest in not being subjected to possible "ridicule or harassment by inmates." *State ex rel. Ledford*, 195 Wis. 2d at 252 ("Public policy . . . dictates that public officers and employees who engage in potentially illegal conduct should have no expectation that public records relating to that conduct will be suppressed simply because news of the records' existence may make their jobs more difficult or dilute their effectiveness in some way.").

¶ 32. As was the case in *Linzmeyer* and *Ledford*, we conclude that the union has failed to tip the scales against public disclosure of the records at issue.

## CONCLUSION

¶ 33. For the reasons discussed above, we affirm the appealed order.

*By the Court.*—Order affirmed.