Hal HEMPEL,
Plaintiff-Appellant-Petitioner,

v.

CITY OF BARABOO and
City of Baraboo Police Department,
Defendants-Respondents.

Supreme Court

*No. 2003AP500. Oral argument September 21, 2004.
—Decided July 13, 2005.*

2005 WI 120

(Also reported in 699 N.W.2d 551.)

For the plaintiff-appellant-petitioner there were briefs by *Aaron N. Halstead, Katy Meter Lounsbury* and *Shneidman, Hawks & Ehlke, S.C.,* Madison, and oral argument by *Aaron N. Halstead.*

For the defendants-respondents there was a brief by *James C. Bohl,* Baraboo, and oral argument by *James C. Bohl.*

¶ 1. DAVID T. PROSSER, J. In this review of a published decision of the court of appeals,[1] we are required to interpret and apply Wisconsin's Open Records Law, Wis. Stat. §§ 19.31–19.39,[2] vis-à–vis documents generated during an internal investigation of

---

[1] *Hempel v. City of Baraboo,* 2003 WI App 254, 268 Wis. 2d 534, 674 N.W.2d 38.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

alleged sexual harassment by a male Baraboo police officer against a female Baraboo police officer, as well as other female officers. Petitioner Hal Hempel (Hempel), the subject of the harassment complaint, seeks review of the appellate decision affirming a circuit court order granting summary judgment to the City of Baraboo (the City) and the City of Baraboo Police Department (the Department) on Hempel's challenge to the denial of his open records request. We must determine whether the Sauk County Circuit Court, Patrick J. Taggart, Judge, erroneously granted summary judgment.

¶ 2. The issues presented are: First, does Wis. Stat. § 19.35(1)(am) give a police officer the personal right to inspect records compiled by a police department in its internal investigation of a sexual harassment complaint against the officer? Second, does Wis. Stat. § 19.35(1)(a) give the public, including the police officer, a right to inspect a police department's records of an internal sexual harassment investigation as well as unredacted copies of related documents when the department does not bring disciplinary charges against the officer, the department articulates several specific concerns about the confidentiality and privacy of cooperating witnesses and its ability to conduct future internal investigations, and the department releases redacted records that preserve witness confidentiality but expose the nature of the harassment complaint?

¶ 3. We conclude, first, that when a person makes an open records request for records containing personally identifiable information under Wis. Stat. § 19.35(1)(am), the person is entitled to inspect the records unless the surrounding factual circumstances reasonably fall within one or more of the statutory exceptions to paragraph (am).

168

¶ 4. Second, if the person makes a more general open records request under § 19.35(1)(a), the records custodian, keeping in mind the strong legislative presumption favoring disclosure, must determine whether the requested records are subject to an exception that may or will prevent disclosure. Two general types of exceptions may apply: statutory exceptions and common law exceptions. *Linzmeyer v. Forcey*, 2002 WI 84, ¶ 10, 254 Wis. 2d 306, 646 N.W.2d 811. If neither a statute nor common law creates a blanket exception, the custodian must decide whether the strong presumption favoring access and disclosure is overcome by some even stronger public policy favoring limited access or nondisclosure. *Id.*, ¶ 11 (citing *Woznicki v. Erickson*, 202 Wis. 2d 178, 192–93, 549 N.W.2d 699 (1996)). To determine whether the presumption of openness is overcome by another public policy concern, we apply the balancing test articulated by the court in *Woznicki* and *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 279 N.W.2d 179 (1979).

¶ 5. Applying these principles to this case, we conclude, first, that Hempel was the subject of an investigation "in connection with a complaint," an express statutory exception to paragraph (am). As such, Hempel's request falls directly within one of the statutory exceptions to disclosure. Disclosure would also expose the names with statements of informants who were promised confidentiality for their cooperation in the internal investigation. He therefore had no right to more information under paragraph (am) than he received. Second, in this case, the public interest in nondisclosure of police investigative records outweighs the public interest in releasing the records under Wis. Stat. § 19.35(1)(a). As a result, the Department had the authority to deny Hempel's open records request. Accordingly, we affirm the decision of the court of appeals.

169

## I. FACTS AND PROCEDURAL POSTURE

¶ 6. This is a fact-intensive case, but the relevant facts are undisputed. Hal Hempel has been a police officer with the Baraboo Police Department for at least 25 years. On January 20, 2000, Captain Dennis Kluge (Kluge) of the Department received a verbal complaint about Hempel from Officer Kaye Howver (Howver). Howver later filed an eight-page written complaint alleging gender-based harassment. In the meantime, Kluge informed Baraboo Police Chief Thomas J. Lobe of the complaint, and Lobe, in turn, informed Hempel that a complaint had been made. The Chief assigned Kluge the responsibility of conducting an investigation.

¶ 7. On February 10, 2000, Captain Kluge delivered a memorandum to Hempel. The memorandum reiterated that a complaint had been filed alleging that Hempel had made "gender-based" statements "degrading to female officers;" advised him that a related investigation was being conducted by the Sauk County Sheriff's Department; and asked to meet with Hempel to obtain his response to the allegations. Kluge attached Howver's full, unredacted complaint to the memorandum. The complaint listed numerous people who allegedly witnessed or had knowledge of Hempel's conduct. On February 18 Hempel met with Kluge and provided a recorded response to Kluge's questions.

¶ 8. The Department's investigation apparently continued until June 2000. On June 13 Baraboo City Attorney James C. Bohl wrote Hempel's attorney informing him that the Chief had decided not to impose any disciplinary measures on Hempel.[3] Three days later, on June 16, Hempel's attorney, Aaron Halstead,

---

[3] City Attorney Bohl's letter of June 13 is not part of the record but is referenced in Attorney Halstead's letter of June 16, 2000.

170

responded, expressing concern that Chief Lobe had not contacted all the potential witnesses named by Hempel and intimating that the failure to get "[Hempel's] side of the story" might affect Chief Lobe's perception of Hempel's future performance.

¶ 9. On August 11 Chief Lobe sent a formal memorandum to Hempel describing the Department's resolution of the complaint. Chief Lobe wrote:

> [The] complaint ... has been resolved to the mutual satisfaction of the parties and the department.... No further action will be taken on this complaint. If another complaint of a similar nature is received, this complaint may be considered at that time. This memo is intended to be documentary only and is not disciplinary. This memo will be retained in Officer Hempel's personnel file for a period of three years from June 8, 2000.

The record does not reveal whether the Department found merit in the complaint, or whether Hempel agreed to take any action in response to the complaint. In any event, Hempel's attorney objected to the retention of the memorandum in Hempel's personnel file. The Baraboo City Attorney ultimately consented to place Attorney Halstead's June 16 letter listing Hempel's concerns in the personnel file with Chief Lobe's final memorandum. In effect, the parties agreed that Hempel's concerns would not be addressed at that time, but were not waived.

¶ 10. On January 24, 2001, Hempel served a written open records request on the Department seeking "any and all written materials gathered or considered by you in connection with [the] complaint against Hal Hempel, including any correspondence or statements received by you in connection with that complaint." The request cited both "Chapter 19 of the Wisconsin Statutes and Sec. 103.13 of the Wisconsin Statutes."

171

¶ 11. On January 31, 2001, Chief Lobe responded to that portion of Hempel's request under Wis. Stat. § 103.13, forwarding all documents in Hempel's *personnel* file related to the complaint. Lobe added:

> Since there was no discipline or other qualifying determination made by this Department under Section 103.13(2) of the Wisconsin Statutes, Officer Hempel is not entitled to inspect any additional records under Section 103.13, Wis. Stats. and to the extent that your request is made under Section 103.13(2) to inspect additional documents, it is denied as no such additional documents exist in Officer Hempel's personnel file.

Chief Lobe's letter indicated that he would issue a second response to the public records request under Chapter 19.

¶ 12. Chief Lobe retired on January 31, so that his letter to Hempel was one of his last official acts. He was succeeded on February 1 by Kluge, who addressed the Chapter 19 public records request in a February 9 letter to Hempel. Chief Kluge wrote that he had been advised by the City Attorney "that Attorney Halstead's record request must be treated the same as if such a request had been made by the news media." He added:

> After reviewing the documents requested and balancing the competing interests implicated in releasing the requested documents, as Record Custodian, I have determined that certain records, in redacted form, are subject to release under the public records law. I have attached to this letter, copies of documents I am proposing to release for public inspection. In addition to the attached documents, I have provided a similar letter to Officer [ ] with a redacted copy of [ ] complaint. If Officer [ ] does not file a court action objecting to the release of [] redacted complaint, I will then provide a copy of that document to you in order to give you

172

additional time to challenge, in Circuit Court, the public release of that document. It is believed that the attached documents, as well as the redacted complaint filed by Officer [ ] may implicate your privacy interest and/or reputational concerns.

. . . .

You should understand that in releasing these records to you, it is the same as releasing the records to the news media or to other members of the public. Therefore, if the news media makes a request to the City for the same records, we will be releasing these records without any additional notification to you.

¶ 13. On February 9 Kluge also implemented this court's decision in *Woznicki,* by separately informing Hempel and complainant Howver of their procedural rights in connection with the possible release of records related to the investigation.

¶ 14. On March 13, 2001, having received no objection from Officer Howver, Chief Kluge provided an extensive written response to Hempel's open records request. First, he agreed to release several records in redacted form, including: (1) the complainant's statement; (2) a Sauk County Sheriff's Office report dated February 10, 2000; (3) Chief Lobe's memo of August 11, 2000; (4) Attorney Halstead's letter of June 16, 2000, expressing concern that the complaint might be used against Hempel in the future; and (5) Attorney Halstead's letter of August 7, 2000, stating his understanding that his letter of June 16 would remain in Hempel's personnel file.

¶ 15. Chief Kluge also denied Hempel's open records request for any documents related to the Department's "internal investigation" of the complaint. Chief Kluge provided six reasons for the denial:

173

1. The City harassment policy provides that when a complaint is received, such as the one [in this case], a "confidential investigation" of the alleged activity will be undertaken by the City. . . .

2. [D]isclosure of [the documents you requested] would interfere with the ability of a law enforcement agency to conduct thorough, confidential, internal investigations. [T]he Police Department's ability to gather statements from members of the Department or other departments would be seriously hampered by public disclosure of such investigations. Furthermore, disclosure would discourage victims and witnesses from providing information to the Department regarding personnel investigations.

3. [D]isclosure . . . would interfere with and hamper the City of Baraboo's ability to ensure employees an opportunity for satisfying careers and fair treatment . . . and would impinge upon the City's right and opportunity to . . . retain competent law enforcement personnel.

4. [N]ondisclosure . . . protect[s] the privacy rights of individuals who cooperated in the investigation, as well as Officer Hempel and [the complainant]. Disclosure of these records might subject witnesses, employees, and their families to increased risk of harassment or other jeopardy.

5. Nondisclosure . . . is further required in order to avoid a loss of morale. . . . [D]isclosure could inhibit the City's ability to hire and retain competent personnel.

6. [T]he documents requested may contain information that [is] mistaken, unsubstantiated, untrue, or irrelevant, and there is a strong public policy in preventing this information from becoming public thereby causing [undue] personal and/or economic harm to the individuals involved. . . . [Disclosure] . . . would constitute an unwarranted invasion of personal privacy. . . .

Chief Kluge concluded:

> [W]hen the public interest in protecting the foregoing policies is balanced against the public interest in providing public access to internal personnel investigations, the public interest to be served by the release of such documents does not out-weigh the countervailing interests that would be impacted by their release. Therefore, in my opinion, there is a strong public policy interest in non-disclosure. This balancing test is particularly relevant under the current facts . . . .

¶ 16. The records Chief Kluge released were substantially redacted. However, even the redacted records disclose a lot of information. For example, one of the documents is redacted as follows: "After (redacted) asked if (redacted) was in trouble I explained to (redacted) that I received information within the last twenty-four hours or so that (redacted) may have suffered some harassment by one of the Baraboo Police Department Officers." Later, the document continues: "(Redacted) said that (redacted) was talking to (redacted) and made the following statements: 'Women are brainless'; 'Women should not be working in police work'; and 'Women should not be working at all.' "

¶ 17. On March 30, 2001, Hempel filed another open records request with the Department, this time asking for "any written record that you prepared in conjunction with the interview of [complainant] . . . [and] any notes that you prepared during or after interviews conducted with other City of Baraboo Police Officers during that timeframe regarding Officer Hempel."[4] The Department denied the new request for the same reasons it denied the original request.

---

[4] The letter of March 30 is not in the record; however, it is quoted in the circuit court's decision.

¶ 18. Unsatisfied with the Department's response, Hempel filed an action against the City, the Department, Sauk County, and the Sauk County Sheriff's Department in Sauk County Circuit Court on June 11, 2001.[5] Hempel sought a court order directing the Department to produce its internal investigative records and reimburse his attorney fees and costs.[6]

¶ 19. The parties filed cross motions for summary judgment. The court granted the defendants' motion and dismissed Hempel's suit. In its decision, the circuit court noted that the public interest in nondisclosure of the requested records outweighed the public interest in disclosure under these circumstances.

¶ 20. The court of appeals affirmed with one judge dissenting. *Hempel v. City of Baraboo,* 2003 WI App 254, ¶¶ 23–24, 268 Wis. 2d 534, 674 N.W.2d 38. The majority reasoned that the public's right to access records "must give way to the important public policy of encouraging victims and witnesses of employment discrimination to cooperate in internal investigations of such conduct." *Id.,* ¶ 22. The dissenting judge believed that the majority's decision would allow Wisconsin municipalities to hide evidence of discrimination behind the shield of nondisclosure. *Id.,* ¶ 31 (Dykman, J., dissenting).

---

[5] Hempel named Sauk County and the Sauk County Sheriff's Department because he sought records that the Sheriff's Department may have prepared while investigating a related complaint against him. He later dismissed the County and the Sheriff's Department from the suit after the Sheriff's Department provided unredacted copies of the records it had prepared.

[6] *See* Wis. Stat. §§ 19.37(1)(a), 19.37(2).

## II. ANALYSIS

### A. Standard of Review

¶ 21. Generally, when we review a grant of summary judgment, we construe the facts in the light most favorable to the nonmoving party. *Strozinsky v. Sch. Dist. of Brown Deer,* 2000 WI 97, ¶ 7 n.3, 237 Wis. 2d 19, 614 N.W.2d 443. Here, however, the facts are not in dispute, and so our task is simply to apply the law to the undisputed facts. *Kraemer Bros. Inc. v. Dane County,* 229 Wis. 2d 86, 92–93, 599 N.W.2d 75 (1999). The application of the Open Records Law to undisputed facts is a question of law that we review de novo, benefiting from the analyses of the circuit court and the court of appeals. *Osborn v. Bd. of Regents,* 2002 WI 83, ¶ 12, 254 Wis. 2d 266, 647 N.W.2d 158.

### B. Wisconsin's Open Records Law

¶ 22. The Wisconsin Open Records Law embodies one part of the legislature's policy favoring the broadest practical access to government.[7] The legislature trumpeted its intent when it stated:

> [I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. . . . To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access

---

[7] *See also* Wis. Stat. §§ 19.81–19.98 (Wisconsin's Open Meetings Law).

generally is contrary to the public interest, and only in an exceptional case may access be denied.

Wis. Stat. § 19.31.

¶ 23. This court has implemented the legislature's directive. *See, e.g., Linzmeyer,* 254 Wis. 2d 306, ¶ 15; *Wisconsin Newspress, Inc. v. Sch. Dist. of Sheboygan Falls,* 199 Wis. 2d 768, 776, 546 N.W.2d 143 (1996) (citing cases).

¶ 24. Two provisions of the Open Records Law are at issue in this case. Hempel claims that he has a right to inspect the records under both Wis. Stat. § 19.35(1)(a), which provides that "[e]xcept as otherwise provided by law, any requester has a right to inspect any record," and Wis. Stat. § 19.35(1)(am), which provides that "any requester who is an individual . . . has a right to inspect any record containing personally identifiable information pertaining to the individual," with certain statutory exceptions.

¶ 25. A "record" subject to the Open Records Law is "any material on which written . . . information is recorded or preserved . . . which has been created or is being kept by an authority." Wis. Stat. § 19.32(2). A custodian who denies a person's written request for records must respond with a written denial specifically stating reasons for denying access to the records. Wis. Stat. § 19.35(4)(b); *see also Mayfair Chrysler-Plymouth, Inc. v. Baldarotta,* 162 Wis. 2d 142, 157, 469 N.W.2d 638 (1991).

¶ 26. The Department concedes that the documents Hempel requested are "records" within the meaning of the law and that the Department is the "authority" with custody of the records. *See* Wis. Stat.

§ 19.32(1).[8] For his part, Hempel concedes that the Department's denial of his request was in writing and sufficiently specific. Therefore, we proceed directly to our analysis of whether the Department must disclose the requested records under Wis. Stat. § 19.35(1)(a) or (am), keeping in mind the presumption favoring disclosure.

¶ 27. When a person makes an open records request for records containing personally identifiable information under Wis. Stat. § 19.35(1)(am), the person is entitled to inspect the records unless the surrounding factual circumstances reasonably fall within one or more of the statutory exceptions to (am). These requests are not subject to any balancing test; the legislature has done the balancing by enacting statutory exceptions to the disclosure requirements.

¶ 28. If, on the other hand, the person makes a more general open records request under § 19.35(1)(a), the records custodian, keeping in mind the strong legislative presumption favoring disclosure, must determine whether the requested records are subject to an exception that may or will prevent disclosure. The presumption favoring disclosure is strong, but is not absolute. *Linzmeyer,* 254 Wis. 2d 306, ¶ 11; *Milwaukee Teachers' Educ. Ass'n v. Bd. Of Sch. Dirs.,* 227 Wis. 2d 779, 787, 596 N.W.2d 403 (1999) (citing *Woznicki,* 202 Wis. 2d at 192–93). Two general types of exceptions may

[8] An "authority" is "any of the following having custody of a record: a state or local office, elected official, agency, board, commission, committee, council, department or public body corporate and politic created by constitution, law, ordinance, rule or order . . . ." Wis. Stat. § 19.32(1).

apply: statutory exceptions and common law exceptions. *Linzmeyer,* 254 Wis. 2d 306, ¶ 10. If neither a statute nor common law creates a blanket exception, the custodian must decide whether the strong presumption favoring access and disclosure is overcome by some even stronger public policy favoring limited access or nondisclosure. *Id.,* ¶ 11 (citing *Woznicki,* 202 Wis. 2d at 192–93). To determine whether the presumption of openness is overcome by another public policy concern, we apply the balancing test articulated by the court in *Woznicki* and *Newspapers, Inc., Id.,* ¶ 12.

¶ 29. In situations in which an individual or his authorized representative makes a request under § 19.35(1)(a) or (am). and "states that the purpose of the request is to inspect or copy a record containing personally identifiable information pertaining to the individual," the statute dictates a procedure. Wis. Stat. § 19.35(4)(c)1. and 3.:

> 1. The authority shall first determine if the requester has a right to inspect or copy the record under sub. (1)(a).

> 3. If the authority determines that the requester does not have a right to inspect or copy the record under sub. (1)(a), the authority shall then determine if the requester has a right to inspect or copy the record under sub. (1)(am) and shall grant or deny this request accordingly.

¶ 30. Hempel made a general request for records under Wis. Stat. § 19.35(1) and did not stress paragraph (am) or "personally identifiable information pertaining to the individual." The Department complains that Hempel's demand in this court for access under paragraph (am) was waived because it was not raised with the Department or the circuit court. Because the issue

was briefed and discussed in oral argument, we will address Hempel's request under paragraph (am).

¶ 31. As we embark on our analysis of the law, we pause to restate which records Hempel is requesting. Hempel already has an unredacted copy of the complaint and several other documents. He was given everything on point from his personnel file. The additional records he requests are the Department's *internal* records produced during its investigation of the complaint. He also seeks the information that was redacted from some of the documents in his possession —mainly names.

## 1. Statutory Analysis Including Exceptions

¶ 32. We turn first to Wis. Stat. § 19.35(1)(am), as this paragraph affords a requester a more potent right of access when it applies. Hempel claims that he is entitled to review records under § 19.35(1)(am) because the records sought contain "personally identifiable information pertaining" to him. Wisconsin Stat. § 19.35(1)(am) provides in part:

> In addition to any right under par. (a), any requester who is an individual or person authorized by the individual, has a right to inspect any record containing personally identifiable information pertaining to the individual that is maintained by an authority and to make or receive a copy of any such information. The right to inspect or copy a record under this paragraph does not apply to any of the following:

¶ 33. The first clause of the introduction indicates that the right of inspection under paragraph (am) is *in addition to* any right under paragraph (a). Conversely, the last sentence of the introduction indicates that the right of inspection under paragraph (am) *does not apply*

in certain circumstances. Because the right under (am) is the right of an "individual" to request records about that individual, it is governed by a different set of principles than the right under paragraph (a).

¶ 34. An "individual" requester who asks to inspect records pertaining to himself is substantially different from a requester, be it a private citizen or a news reporter, who asks to inspect records about any of a wide variety of government activities or a wide array of other people. The right to inspect under paragraph (am) is clearly limited to personally identifiable information about the requester. When a request is made within that narrow scope, the right is more unqualified than a right under paragraph (a), first, because paragraph (am) does not recognize common law exceptions and, second, because paragraph (am) is not subject to a balancing test. Paragraph (am) recognizes only statutory exceptions. When these statutory exceptions are present, however, paragraph (am) "does not apply."[9]

¶ 35. The Department claims that Wis. Stat. § 19.35(1)(am)1. defeats the presumption of access in this case. It reads:

> 1. Any record containing personally identifiable information that is collected or maintained in connection with a complaint, investigation or other circumstance that may lead to an enforcement action, administrative proceeding, arbitration proceeding or court proceeding, or any such record that is collected or maintained in connection with such an action or proceeding.

Wis. Stat. § 19.35(1)(am)1.

---

[9] Like paragraph (a), paragraph (am) is also subject to Wis. Stat. § 19.35(1)(em), (g), (h), (j), and (k), and Wis. Stat. § 19.36.

¶ 36. The Department's invocation of subparagraph 1. is weakened by Chief Lobe's August 11, 2000, memorandum to Hempel, in which the Chief wrote that the Department's investigation "has been resolved to the mutual satisfaction of the parties and the department . . . . No further action will be taken on this complaint."

¶ 37. At the same time, as the Department notes, the Chief's memo also stated that the Department could "consider" this complaint if someone else brought "another complaint of a similar nature" against Hempel within a three-year period. In that event, the second complaint, not this one, would "lead to" one of the proceedings the statute describes. The Department could consider the circumstances of the instant complaint at the time of the hypothetical second complaint as an additional factor in deciding whether to impose discipline. The instant complaint would then be a record "maintained" in connection with a pending complaint. Hence, to some degree, the instant "investigation or other circumstance" was still "ongoing" at the time of Hempel's open records request.

¶ 38. The conditional language in (am)1. makes the intended result in these circumstances unclear.

¶ 39. The Department also contends that the records sought are exempt from disclosure under Wis. Stat. § 19.35(1)(am)2.b. This provision exempts from disclosure any record that would "[i]dentify a confidential informant." The Department claims that it told witnesses that any information they provided would remain confidential, and therefore, this exception would apply to prevent disclosure.[10]

---

[10] An unredacted copy of Officer Howver's complaint was provided to Hempel. Officer Howver was given a *Woznicki*

¶ 40. It is not clear from the language of this provision what qualifies a person as a "confidential informant."[11]

¶ 41. Two cases illustrate the problem. In *Mayfair*, a Wisconsin Department of Revenue field auditor promised an "informant" anonymity in exchange for information regarding action by the informant's employer. The information the informant provided was relevant to an audit of the employer's tax returns. This court held that "the harm to the public interest from the disclosure of portions of records which would reveal the identity of a confidential informant who received a pledge of confidentiality outweighs the public interest in disclosing these records." *Mayfair*, 162 Wis. 2d at 149. This decision was issued before the enactment of either Wis. Stat. § 19.35(1)(am) or Wis. Stat. § 19.36(8).

¶ 42. In *Linzmeyer*, a more recent case, police investigated allegations that a high school teacher made inappropriate statements and engaged in inappropriate conduct with students. During the investigation, the police interviewed more than 20 students. The police may have promised confidentiality, but this court stated that "none of the students interviewed was a confidential informant." *Linzmeyer*, 254 Wis. 2d 306, ¶ 19. The court allowed that the students "may have

---

notice and did not object to release of redacted documents. Officer Howver's name appears in the court of appeals opinion and in the briefs of both parties. Consequently, the complainant's name is part of the public record.

[11] The dissent argues that we should look to Wis. Stat. § 19.36(8)(a)1. for a definition of "informant." Chief Justice Abrahamson's dissent, ¶ 111. That provision is not dispositive because § 19.36(8)(a) begins with the language "*In this subsection* . . . 'Informant' means . . . ." (Emphasis added.) Paragraph (8)(b) alludes to Wis. Stat. § 19.35(1)(a) but not § 19.35(1)(am).

some privacy interest in protecting their own identities." *Id.*, ¶ 40. The court suggested that those interests "could be protected by a redaction of the Report in accordance with Wis. Stat. § 19.36(6)." *Id.*

¶ 43. In *Linzmeyer,* the subject of the investigation attempted to prevent disclosure of the records. The police department was trying to release the records. Consequently, the posture of the case was quite different from the present litigation. To the extent that the teacher in *Linzmeyer* was attempting to use the exceptions in paragraph (am) to prevent the police department from releasing his records, he was misapplying the statute.

¶ 44. Because the scope of the term "confidential informant" is not clear, the result intended by the legislature in these circumstances is not clear. We think the ambiguity in both subdivisions 1. and 2. permits the court to examine extrinsic sources to discern legislative intent.

¶ 45. Wisconsin Stat. § 19.35(1)(am) was shoehorned into the Open Records Law in the 1991 session of the legislature. A review of its history suggests that it should be applied carefully to effect its purpose.

¶ 46. Paragraph (am) was adopted in two stages. The first stage was a sweeping amendment to the 1991–93 biennial budget. *See* 1991 Wis. Act 39, § 212qz. This amendment, authored by Representative Marlin Schneider, originated with the Legislative Council's Special Committee on Privacy and Information Technology.[12] It created Subchapter IV of Chapter 19 entitled "Personal Information Practices," and included 10 sections. One of these sections was Wis. Stat. § 19.73,

---

[12] *See* Legislative Council Information Memorandum 92–13 at 5.

entitled "Rights of data subject to inspect, copy, challenge, and correct." The governor vetoed the words "and correct" as well as a substantial number of other words and phrases in the section. After the vetoes, the section read in part as follows:

19.73 Rights of data subject to inspect, copy, challenge. (1) In this section, "person authorized by the individual" means the parent, guardian, as defined in s. 48.02(8), or legal custodian, as defined in s. 48.02(11), of a child, as defined in s. 48.02(2), the guardian, as defined in s. 880.01(3), of an individual adjudged incompetent, as defined in s. 880.01(4), the personal representative or spouse of an individual who is deceased or any person authorized, in writing, by the individual to exercise the rights granted under this section.

(2) Upon request, any individual or person authorized by the individual, may inspect any record containing personally identifiable information pertaining to the individual that is maintained by an authority and make or receive a copy of any such information in a form which is comprehensible to the individual or person authorized by the individual. The authority may impose a fee not to exceed the fees under s. 19.35(3) for providing a copy of the information.

. . . .

(4) This does not apply to any of the following:

(a) Records transferred to an archival depository under s. 16.61(13).

(b) Personally identifiable information in a case or action.

(c) Any record pertaining to an individual if a specific statute prohibits the disclosure of the record to the individual.
. . . .

186

(e) Personally identifiable information which relates to investigation, enforcement action, prosecution or other action.

1991 Wis. Act 39, § 19.73.

¶ 47. The governor's vetoes concentrated on subsection (3), which discussed an authority's duties upon being advised that it was holding inaccurate information, and subsection (4), which outlined exceptions to the section's coverage.

¶ 48. By its plain language, subsection (2) permitted an individual to inspect "any record containing personally identifiable information pertaining to the individual" maintained by a governmental authority. Had there not been exceptions in subsection (4) , subsection (2) would have provided access to the records of pending investigations involving the "individual" requester. In fact, however, there were exceptions. By vetoes, the governor attempted to broaden them.[13] His

---

[13] The effect of the governor's partial vetoes can be seen in proposed Section 19.73(4)(b) and (e):

(4) This ~~subsection~~ does not apply to any of the following:

. . . .

(b) Personally identifiable information ~~that is at issue~~ in a ~~(pending contested~~ case ~~under ch. 227~~ or ~~a pending court~~ action.

. . . .

(e) Personally identifiable information which relates to ~~the~~ investigation, ~~prosecution or other~~ enforcement action ~~of possible violations of law unless:~~

~~1. The information has been maintained for a period longer than reasonably necessary to conclude the investigation,~~ prosecution or other ~~enforcement~~ action~~, and~~

~~2. Disclosure of the information would not reveal confidential investigatory methods, strategies or practices.~~

vetoes left a very confusing statute that needed prompt revision.

¶ 49. The purpose of the 1991 amendment was explained in Legislative Council Information Memorandum 92–13 entitled "New Laws Relating to Personal Information Contained in State and Local Government Records." The Memorandum stated that the Special Committee on Privacy and Information Technology had reviewed a "Code of Fair Information Practices" issued by the United States Department of Health, Education and Welfare. *See* Legislative Council Information Memorandum 92–13 at 6. The Secretary's Advisory Committee had developed five concepts:

a. There must be no personal data recordkeeping system whose very existence is secret.

b. There must be a way for an individual to find out what information about the individual is in a record and how it is used.

c. There must be a way for an individual to prevent information about him or her from being used or made available, without his or her consent, for purposes other than that for which it was obtained.

d. There must be a way for an individual to correct or amend a record of identifiable information about the individual.

e. Any organization creating, maintaining, using or disseminating records of identifiable personal data must assure the reliability of the data for the intended use and must take reasonable precautions to prevent misuse of the data.

*Id.*

188

¶ 50. These important goals were quite distinct from the traditional principles of the Open Records Law. As a result, the new legislation of necessity required exceptions. As illustrated in ¶ 48 n.13 herein, the governor attempted to make these exceptions broader.

¶ 51. The new legislation lasted less than a year. In a second stage, the 1991 legislature substantially revised Subchapter IV and eliminated Wis. Stat. § 19.73. *See* 1991 Wis. Act 269. Act 269 created paragraph (am) by splicing together old, revised, and new text and inserting it into Wis. Stat. § 19.35(1). A clause in the new paragraph opening up certain investigative records under § 19.35(1)(am)1. one year after "the conclusion of such an action or proceeding ... or the closing of an investigation that does not result in such an action or proceeding" was *vetoed.*

¶ 52. The discussion in ¶¶ 45–51 above shows that paragraph (am) does not fit neatly into Wis. Stat. § 19.35(1). Unlike paragraph (a), paragraph (am) is subject to only statutory exceptions, not common law rules or a "balancing of interests." *See* Legislative Council Information Memorandum 92–13 at 17. A proper request under (am) is *not* treated the same as if the request had been made by the news media, because the "news media" do not make requests under paragraph (am). They make open records requests under Wis. Stat. § 19.35(1)(a).

¶ 53. The very existence of paragraph (am) may have facilitated legislation about access to public records concerning law enforcement informants. 1993 Assembly Bill 260, authored by Representative Rosemary Hinkfuss, created Wis. Stat. § 19.35(1)(em) and Wis. Stat. § 19.36(8) relating to law enforcement infor-

mants. *See* 1993 Wis. Act 93. Her original bill carried the following analysis by the Legislative Reference Bureau:

> Under current law, any person may inspect, copy or receive a copy of a public record unless the record is specifically exempted from access under state or federal law or authorized to be withheld from access under state law, or unless the custodian of the record determines that the harm done to the public interest by providing access to the record outweighs the strong public interest in providing access. Applying this test, the Wisconsin supreme court has held that the need to maintain the integrity of the government's pledges of confidentiality to law enforcement informants may outweigh the public's interest in having access to records that could identify a confidential informant if a 4–prong test is met: 1) there is a clear pledge of confidentiality; 2) the pledge was made to obtain information; 3) the pledge was necessary to obtain the information; and 4) in the particular fact situation, the harm to the public interest that would result from permitting access outweighs the public interest in providing access. *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta,* 162 Wis. 2d 142, 167–168 (1991).
>
> *This bill provides that a law enforcement agency shall withhold from access any public record or portion of a record containing information that, if disclosed, would identify an informant who provided information to that agency or to another law enforcement agency, unless the custodian of the record makes a determination, at the time that a request for access to the record is made, that the public interest in allowing access to the record outweighs the harm done to the public interest by providing such access.* Under the bill, the agency must apply this test regardless of whether an informant requests confidentiality and regardless of whether a pledge of confidentiality is made.

Legislative Reference Bureau Drafting File for 1993 Wis. Act 93, *Analysis by the Legislative Reference Bureau* of 1993 Assembly Bill 260 (emphasis added).

¶ 54. The 1993 legislation strengthened a custodian's ability to withhold records identifying informants. Wisconsin Stat. § 19.36(6) had already authorized redaction. The 1993 legislature added Wis. Stat. §§ 19.35(1)(em) and 19.36(8)(b) authorizing the deletion of parts of records involving informants.

¶ 55. Against this background, we think that paragraph (am) should be interpreted to reflect its original purpose of giving an individual access to records containing personally identifiable information about the individual, so that he or she may determine what information is being maintained and whether this information is accurate. Giving an individual access to records of a government investigation that may be used in a future proceeding, particularly internal investigative records that will identify informants, was never an objective of this paragraph.

¶ 56. Paragraph (am) is not subject to a balancing of interests. *See* Legislative Council Information Memorandum 92–13 at 17. Therefore, the exceptions to paragraph (am) should not be narrowly construed.[14] A requester who does not qualify for access to records under paragraph (am) will always have the right to seek

---

[14] The dissent asks whether we interpret the exceptions "broadly." *See* Chief Justice Abrahamson's dissent, ¶¶ 98–99. We do not construe the exceptions "broadly." We simply give effect to the statutory language as informed by the legislative history.

records under Wis. Stat. § 19.35(1)(a), as well as civil and criminal discovery statutes in appropriate circumstances.

¶ 57. We conclude that a police officer is not entitled to inspect records of an internal investigation pertaining to the officer under Wis. Stat. § 19.35(1)(am) if the factual circumstances reasonably fall within one or more of the statutory exceptions to (am). In this case, Hempel was the subject of an investigation "in connection with a complaint." The internal investigation records were maintained in connection with that complaint and are being held for possible use in connection with any future complaint. Disclosure of the records would also expose the names and statements of informants who were promised confidentiality for their cooperation in the internal investigation. Hempel had no right to more information than he received under paragraph (am).

¶ 58. This brings us to Wis. Stat. § 19.35(1)(a), which provides:

> Access to records; fees. (1) Right to Inspection. (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

¶ 59. Given the clear declaration of policy embodied in Wis. Stat. § 19.31, § 19.35(1)(a) must always be interpreted with that policy in mind. This means that even though § 19.35(1)(a) recognizes both statutory and common law exceptions and is ultimately subject to a balancing test, the section is to be construed "in every instance with a presumption of complete public access, consistent with the conduct of governmental business." Wis. Stat. § 19.31. "[O]nly in an exceptional case may access be denied." *Id.*

¶ 60. The statutory exceptions and limitations to § 19.35(1)(a) include paragraphs (em), (g), (h) , (k), (L), and Wis. Stat. § 19.36. We conclude that none of these provisions creates a blanket exception to a request under the facts of this case. Wisconsin Stat. § 19.36(8)(b) specifically contemplates a balancing of interests.

2. Common Law Exceptions

¶ 61. The Department points to common law exceptions that would permit it to avoid disclosures beyond those already made. It bases its argument on a line of cases from the court of appeals, especially *Pangman v. Zellmer,* 163 Wis. 2d 1070, 473 N.W.2d 538 (Ct. App. 1991), and *Village of Butler v. Cohen,* 163 Wis. 2d 819, 472 N.W.2d 579 (Ct. App. 1991). In both *Zellmer* and *Cohen,* the court of appeals ruled that the custodians of police personnel documents were justified in refusing to release unredacted copies of those documents when the custodians articulated clear policy reasons for nondisclosure. *Zellmer,* 163 Wis. 2d at 1083, 1086–89; *Cohen,* 163 Wis. 2d at 827. The court cited several valid policy considerations, including the protection of the officers' privacy and reputation, the potential chilling on supervisors' willingness to candidly

193

assess officers if the assessments became public, and police agencies' ability to attract quality candidates for job openings. *Zellmer,* 163 Wis. 2d at 1083, 1086–89; *Cohen,* 163 Wis. 2d at 828–29. In *Zellmer,* the court approved nondisclosure because it would hamper the department's ability to thoroughly investigate wrongful conduct. 163 Wis. 2d at 1082–83.

¶ 62. *Zellmer* and *Cohen* do not impose a blanket rule excepting the disclosure of any "rank-and-file police officer's" personnel records. An open records analysis under paragraph (a), is rarely subject to blanket exceptions or bright line rules. Each request will lead to a fact-intensive inquiry. Under this statutory structure, the legislature entrusted the records custodian with substantial discretion. The custodian, mindful of the strong presumption of openness, must perform the open records disclosure analysis on a case-by-case basis. In situations such as this one, in which the requested records do not fit within any blanket exception, the records custodian must proceed to the final step of the analysis and perform the *Woznicki* balancing test.

C. Balancing Test

¶ 63. As the custodian considers an open records request under Wis. Stat. § 19.35(1)(a), the custodian must consider "all the relevant factors" to determine "whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection." *Woznicki,* 202 Wis. 2d at 192 (citing *Newspapers, Inc.,* 89 Wis. 2d at 427); *see also Linzmeyer,* 254 Wis. 2d 306, ¶ 24. In other words, the custodian must

determine whether the surrounding factual circumstances create an "exceptional case" not governed by the strong presumption of openness. Wis. Stat. § 19.31. Although our prior cases have not expressly defined "exceptional case," we conclude that an "exceptional case" under paragraph (a), exists when the facts are such that the public policy interests favoring nondisclosure outweigh the public policy interests favoring disclosure, *notwithstanding* the strong presumption favoring disclosure.

¶ 64. Applying the "exceptional case" public policy balancing test to the specific facts before us, we conclude that the public's interest in keeping these records confidential outweighs the presumptive public interest in disclosure.

¶ 65. This is an uncommon case. Typically, a person subject to misconduct allegations attempts to prevent disclosure of the investigative records. In this case, Hempel is the party seeking release of the records. Hempel advises us that he wants to review these records so that he may conduct his own investigation, interviewing witnesses that the Department interviewed, in case the Department decides to use this complaint against him should it receive a similar complaint in the future. We note, however, that Hempel received an *unredacted* copy of Kaye Howver's complaint as well as all the material that the Sauk County Sheriff's Department compiled during its simultaneous investigation of Hempel pursuant to similar allegations. This disclosure substantially weakens Hempel's proffered reason for wanting the documents because those unredacted materials contain the names of at least 21 potential witnesses with whom Hempel could begin his "investigation," including the complainant herself. We do not know whether the Department actually inter-

viewed all the potential witnesses named in the complaint, but Hempel could have interviewed any or all of them at his discretion. With such a fertile start for his investigation, it is hard to understand why Hempel needs further assistance.

¶ 66. Hempel asserts that his actual motivation in seeking the documents is irrelevant. In fact, requesters under the Open Records Law need not identify themselves, or state a purpose for their request. Wis. Stat. § 19.35(1)(i). When performing a balancing test, however, a records custodian almost inevitably must evaluate context to some degree.

¶ 67. The dissenting judge in the court of appeals cast the issue in light of the public's right to know of the sexual harassment allegations within the Department. *Hempel*, 268 Wis. 2d 534, ¶ 31 (Dykman, J., dissenting). Judge Dykman accused the Department of "hiding" the evidence of discrimination from the public.

¶ 68. Evidence of official cover-up would be a very potent reason to disclose public records. The public has a very strong interest in being informed about public officials who have been derelict in their duty. In this case, however, we do not sense that cover-up constitutes any part of the basis for the Department's position. We think the Department's motive is more accurately described in the court of appeals majority opinion, *see Hempel*, 268 Wis. 2d 534, ¶¶ 20–21, and in the Department's stated concern about potential future harassment.

¶ 69. The Department provided Hempel with an unredacted copy of the complaint and then released a redacted copy. It told Hempel the redacted copy was available to any citizen. In our view, these redacted records do not reveal "little more than nothing," as the dissenting court of appeals judge contends. On the

contrary, despite redactions, the records provide a substantial degree of understanding about the alleged problem within the Department. As we have noted, one of the documents contained the following text: "After (redacted) asked if (redacted) was in trouble I explained to (redacted) that I received information within the last twenty-four hours or so that (redacted) may have suffered some harassment by one of the Baraboo Police Department Officers." The document continues: "(Redacted) said that (redacted) was talking to (redacted) and made the following statements, 'Women are brainless'; 'Women should not be working in police work'; and 'Women should not be working at all.'" These documents provide substantial information with which a citizen or the news media could pursue an inquiry on sexual harassment within the police department. The inquiry could start with the known complainant.

¶ 70. The redaction authorized by Wis. Stat. § 19.36(6) protected the privacy and confidentiality of certain witnesses without hiding alleged conduct. We believe that the Department's release of the redacted documents weighs heavily in the balancing test.

¶ 71. In addition to these factors, other evidence supports our conclusion. As the Department noted in its letter denying access to Hempel, disclosure would violate the City's confidentiality policy. Hempel strenuously urges us to reject this consideration, contending that an authority may not avoid the operation of the Open Records Law simply by enacting its own policy. He is of course correct. The City—indeed, any municipality —cannot implement a policy that provides for a blanket exception from the Open Records Law. But the Department may proffer the confidentiality concerns of wit-

nesses or a complainant as a factor the custodian may consider in the balancing test.

¶ 72. We agree with the Department that in the future, complainants and witnesses will become less likely to make candid statements if they know that the accused may access their statements through an open records request. Some officers, fearful of being labeled as "whistle blowers," may blanch at the thought of offering damaging evidence about a colleague if they know that their names and comments will become public record.

¶ 73. We believe the Department's concern about witness confidentiality carries special weight in cases like this one involving sexual harassment. The City has enacted a sexual harassment policy pursuant to the Equal Employment Opportunity Commission's (EEOC's) recommendation.[15] The Department handled the Hempel complaint in accordance with that policy. The Department argues that victims and witnesses might feel an increased level of embarrassment if their names were revealed, and this might make them less likely to come forward. The Department may argue reasonably that its attempt to avoid such a chilling effect on sexual harassment complaints must weigh in the balance. Neither this opinion nor language in the court of appeals' opinion should be interpreted to sug-

---

[15] The EEOC recommends that:

Prevention is the best tool for the elimination of sexual harassment. An employer should take all steps necessary to prevent sexual harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under Title VII, and developing methods to sensitize all concerned.

29 C.F.R. § 1604.11(f) (2004).

gest a blanket exception to the open records law for EEOC complaints. *Hempel,* 268 Wis. 2d 534, ¶ 20 n.4. Rather, as in every other case, the records custodian must perform the balancing test to determine whether the public interest in nondisclosure in the particular case outweighs the public interest in disclosure.

¶ 74. We further agree with the Department that release of the information could cause a loss of morale within the Department if police officers believed that their personnel files were readily available to the public. At oral argument, the Department contended that this might even make officers reluctant to make arrests out of fear that their personnel records would quickly be passed on to defense counsel. The Department did not provide any facts to support this concern. Nonetheless, without fully endorsing the Department's argument, we agree that a loss of morale is plausible.

¶ 75. The Department also contends that it will encounter difficulty attracting quality candidates to become police officers if there is a perception that its employees' personnel files are regularly open for public review. The Department presented no evidence to support this view. Public employees are frequently subject to a greater degree of public scrutiny than their private counterparts. This scrutiny comes with the territory. Certainly, prominent public officials must have a lower expectation of personal privacy than a regular public employee. *Wisconsin Newspress,* 199 Wis. 2d at 787. This case, however, involves a rank-and-file police officer. If the scrutiny of rank-and-file officers extends too far, it may indeed discourage qualified candidates from entering police work. Accordingly, we conclude that this factor weighs slightly in the Department's favor.

¶ 76. Finally, the Department voices the concern that some of the information that would be released

might be factually inaccurate and cause damage to the subject's reputation. This would not be a concern if the information were released only to the individual requester under paragraph (am), but information released under paragraph (a), enters the public domain and is available to anyone.

¶ 77. Once a secret is out of the box, it can never be put back. In this respect, records dealing with personnel issues are slightly different from records concerning, say, public finance or highway contracts. As the court of appeals noted in *Cohen,* disclosure may inhibit candid assessments of employees in personnel records. *Cohen,* 163 Wis. 2d at 828 n.3. The court also detected a legislative interest in limiting access to personnel files of public employees. *Id.* at 829. We cited this language with approval in *Woznicki.* 202 Wis. 2d at 188.

¶ 78. The privacy interests in this case are more compelling than those at issue in most of our prior cases because we are not presented here with an alleged wrongdoer trying to cover up evidence. Rather, the Department, as custodian, is trying to protect the complainant and reluctant witnesses involved in its investigation. This factor is not dispositive, but it weighs on the Department's side.

■

¶ 79. The court of appeals noted that the Department did not provide any hard evidence to support this concern. *Hempel,* 268 Wis. 2d 534, ¶ 18. In fact, the Department provided few facts to support any of its concerns. However, the statute does not require the records custodian to give facts supporting the reasons for its denial. *See* Wis. Stat. § 19.35(4)(b). It merely requires the custodian to provide specific reasons for the denial. *Id.* The court reviewing the custodian's

decision is free to evaluate the strength of the custodian's reasoning in the absence of facts. *Id.* (custodian's decision subject to mandamus review by circuit court); *see also* Wis. Stat. § 19.37(1). Factual support for the custodian's reasoning is likely to strengthen the custodian's case before a circuit court.

¶ 80. After reviewing all the enumerated considerations,[16] we conclude that the public policy factors favoring nondisclosure are strong enough to overcome the substantial presumption in favor of disclosure.[17]

¶ 81. We reiterate that the outcome here will not be the same in every similar case. The records custodian must evaluate the factors on each side of the balance, keeping in mind the strong presumption favoring disclosure, and evaluate each request within its own factually specific context. The facts in this case dictate that we affirm the court of appeals.

## III. CONCLUSION

¶ 82. When a person makes an open records request for records containing personally identifiable information under Wis. Stat. § 19.35(1)(am), the person

[16] We disagree with the dissent's assertion that any custodian proffering the same reasons Baraboo has can avoid disclosure, and that we therefore create a de facto blanket exception. Chief Justice Abrahamson's dissent, ¶ 128. Any balancing test is necessarily factually intensive, and the facts peculiar to a particular case may dictate a different outcome even if parties advance the same general justifications for disclosure.

[17] The disclosure of public records often has the abstract value of promoting accountability by public officers and employees. If disclosure will have the effect of undermining accountability by making internal investigation more difficult, that consequence may be considered.

201

is entitled to inspect the records unless the surrounding factual circumstances reasonably fall within one or more of the statutory exceptions to (am).

¶ 83. If the person makes a more general open records request under § 19.35(1)(a), the records custodian, keeping in mind the strong legislative presumption favoring disclosure, must determine whether the requested records are subject to an exception that may or will prevent disclosure. Two general types of exceptions may apply: statutory exceptions and common law exceptions. *Linzmeyer,* 254 Wis. 2d 306, ¶ 10. If neither a statute nor common law creates a blanket exception, the custodian must decide whether the strong presumption favoring access and disclosure is overcome by some even stronger public policy favoring limited access or nondisclosure. *Id.,* ¶ 11 (citing *Woznicki,* 202 Wis. 2d at 192–93). To determine whether the presumption of openness is overcome by another public policy concern, we apply the balancing test articulated by the court in *Woznicki* and *Newspapers, Inc.*

¶ 84. Applying these principles to the facts of this case, we conclude, first, that Hempel was the subject of an investigation "in connection with a complaint," an express statutory exception to paragraph (am). Disclosure would also expose the names with statements of informants who were promised confidentiality for their cooperation in the internal investigation. He therefore had no right to more information under paragraph (am) than he received. Second, in this case, the public interest in nondisclosure of police investigative records outweighs the public interest in releasing the records under Wis. Stat. § 19.35(1)(a). As a result, the Department had the authority to deny Hempel's open records request under § 19.35(1)(a). Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 85. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). "The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied."[1] So sayeth the legislature. The majority opinion candidly admits this is not an "exceptional case," calling it only "uncommon."[2] Because neither the majority opinion nor the City of Baraboo has demonstrated how this case is exceptional or even uncommon, I dissent.

¶ 86. Faced with trying to craft a standard to cover this decidedly unexceptional case, the majority opinion ends up, despite its assertions, creating a rule that unfortunately can be applied in a broad array of cases to deny access to records.

---

[1] Wis. Stat. § 19.31. The Wisconsin Legislature's Declaration of Policy as to access to governmental records reads as follows:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

*Id.*

[2] Majority op., ¶ 65.

203

¶ 87. I disagree with the majority opinion on both its interpretation of the statutory exceptions to record access provided in Wis. Stat. § 19.35(1)(am) and its conclusion that there is merit in the reasons proffered by the Baraboo Police Department for denying disclosure under Wis. Stat. § 19.35(1)(a).

¶ 88. Hempel made "a formal request pursuant to Chapter 19" and "Sec. 103.13" that the Police Chief produce copies of any and all materials gathered or considered by him in connection with the complaint against him.[3] The majority opinion addresses two provisions in chapter 19, discussing first Wis. Stat. § 19.35(1)(am) and then § 19.35(1)(a). The majority's order for considering the statutes is backwards, according to the directions set forth in § 19.35(4)(c)1.-3. and the plain language of § 19.35(1)(am).

¶ 89. The majority opinion recognizes the legislature's crystal-clear mandate as to the order in which to consider the two statutes,[4] but does not take it seriously.[5] The majority's order in addressing the stat-

---

[3] Letter from Attorney Aaron N. Halstead to Chief Lobe (Jan. 24, 2001), reproduced in Petitioner's Appendix at 135.

An open records request need not specify the statutory provision under which it is being made. The open records law does not require "a request to contain any 'magic words' nor [does it] prohibit the use of any words." *ECO, Inc. v. City of Elkhorn,* 2002 WI App 302, ¶ 23, 259 Wis. 2d 276, 655 N.W.2d 510 (Open records request made to city mistakenly cited the federal Freedom of Information Act rather than chapter 19; deemed sufficient). The request is sufficient if " 'it reasonably describes the requested record or the information requested.' " *Id.,* ¶ 23 (quoting Wis. Stat. § 19.35(1)(h)).

[4] Majority op., ¶ 29.

[5] Majority op., ¶ 32. The majority opinion nevertheless persists in writing that if Hempel cannot get the record under

utes demonstrates not only a disregard for the legislature's clear instructions, but also fosters its mistaken interpretation of the statutes.

¶ 90. According to Wis. Stat. § 19.35(4)(c), when an authority receives a request for access to records under either § 19.35(1)(a) or (1)(am), the authority shall first determine whether the requester has a right to inspect or copy a record under § 19.35(1)(a). If the authority grants the request for access under § 19.35(1)(a), it need go no further. If the authority determines that the requester does not have a right to access to the record under § 19.35(1)(a), the authority should then turn to § 19.35(1)(am) to determine whether the request should be granted or denied. Section 19.35(1)(am) thus grants an individual requester greater access to records with personally identifiable information than § 19.35(1)(a) grants to all other requesters who are not seeking personally identifiable information.[6]

¶ 91. The plain language of § 19.35(1)(am) further resolves the issue of the order of addressing the statutes. Section 19.35(1)(am) begins by saying, "*In addition to any right under [§ 19.35(1)] par. (a),* any requester who is an individual" may have access to personally identifiable records of that individual. Because Wis. Stat. § 19.35(1)(am) starts with the words

---

§ 19.35(1)(am) he "will always have the right to seek records under Wis. Stat. § 19.35(1)(a)." Majority op., ¶ 56.

[6] This order is also set forth in Wisconsin Legislative Council Information Memorandum 92–13, *New Laws Relating to Personal Information Contained in State and Local Government Records (1991 Wisconsin Acts 39, 269 and 317)* at 17–18 (June 16, 1992).

Although the majority opinion relies on this memorandum, it relates to laws that were later revised.

"[i]n addition to any right under [§ 19.35(1)(a)]" and does not require the government authority to balance interests,[7] § 19.35(1)(am) allows greater access to information for personally identified persons than does § 19.35(1)(a).

¶ 92. Wisconsin Stat. § 19.35(1)(am) gives a requester more extensive access to information in which the requester is personally identifiable than does § 19.35(1)(a) because, as the majority opinion recognizes, the purpose of paragraph (am) is to enable a person to "determine what information is being maintained and whether this information is accurate."[8] Paragraph (am) must therefore be interpreted as an extended right of access to requesters seeking personally identifiable information to allow these requesters to determine the nature and correctness of the information being maintained.

¶ 93. Despite the incorrect order in which the majority opinion discusses the statutes, for the reader's ease I shall follow the order the majority opinion uses.

¶ 94. Hempel sought access to records related to allegations that he engaged in sexual harassment. His request made it clear that he was seeking personally identifiable information about himself.

I

¶ 95. Section 19.35(1)(am) grants any requester, "in addition" to any other right of access under § 19.35(1)(a), "the right to inspect any record containing personally identifiable information pertaining to the individual that is maintained by an authority . . . ."

---

[7] Majority op., ¶ 56.

[8] Majority op., ¶ 55.

The statute then excepts certain enumerated records from the right to inspect, two of which are at issue here.

¶ 96. According to the majority opinion, the Baraboo Police Department may deny Hempel access to internal investigation memoranda pertaining to Hempel on the basis of either of two enumerated exceptions to open records set forth in Wis. Stat. § 19.35(1)(am)1. and 2.b.[9] Because I conclude that neither of these statutory exceptions applies in this case, I would require the Baraboo Police Department to release internal investigation memoranda with information redacted as necessary.

¶ 97. The first exception on which the majority hangs its hat is § 19.35(1)(am)1. Under that provision, the right to inspect does not apply to the following records:

> Any record containing personally identifiable information that is collected or maintained in connection with a complaint, investigation or other circumstances that may lead to an enforcement action, administrative proceeding, arbitration proceeding or court proceeding, or any such record that is collected or maintained in connection with such an action or proceeding.

Specifically, the majority asserts that Hempel was the "subject of an investigation 'in connection with a complaint.' The internal investigation records were maintained in connection with that complaint and are being held for possible use in connection with any future complaint."[10]

¶ 98. The majority opinion declares that the exception is ambiguous and turns to legislative history. The legislative history cited lends little if any informa-

---

[9] Majority op., ¶ 57.
[10] Majority op., ¶ 57.

tion about interpreting this exception, but the majority opinion nevertheless surmises from the legislative history that the exception in Wis. Stat. § 19.35(1)(am)1. should "not be construed narrowly." If it is not to be construed narrowly, is it to be construed broadly?[11] The majority opinion denies that it intends to construe the exception broadly.[12] I gather that the majority opinion is advocating that the exception be construed "just right."

¶ 99. Declaring that the exception in Wis. Stat. § 19.35(1)(am)1. should "not be construed narrowly" is incongruous. Section 19.35(1)(am) grants individuals

---

[11] Although an interesting exploration of legislative and executive wordsmithing, the majority opinion's review of selected excerpts of legislative history offers no conclusive interpretation of Wis. Stat. § 19.35(1)(am)1. or 2.b. in keeping with or contrary to the plain language of the statute.

The majority opinion seizes on the governor's partial veto as indicating that exceptions have to be interpreted broadly because the governor's partial veto eliminated some legislative language. Majority op., ¶ 48 n.13, ¶ 50. Governor Thompson's full veto message explains the veto as follows:

> Section 26s specifies that records under the Personal Information Practices Law that are collected or maintained in connection with a complaint, investigation or circumstances that may lead to an enforcement action, court proceeding or other proceeding may be released one year after the conclusion of the action, proceeding or investigation or one year after the filing of a complaint. I am vetoing this provision because it would require prosecutors and investigators to turn over confidential files only one year after the filing of a complaint, at which time a sensitive complaint investigation may not be concluded. Also, I do not believe that confidential investigation files should be available for inspection by criminal defendants at any time.

Governor Tommy Thompson, Veto Message to Senate Bill 483 (available at Legislative Reference Bureau, Madison, WI).

[12] Majority op., ¶ 56 n.14.

seeking personally identifiable information additional rights of access as compared to access by the public. Why should the exception to this extensive grant of access be read "not narrowly"? Such a reading of the exception defeats the extensive right of access granted. Furthermore, the general rule for interpreting exceptions to the open records law is that they are to be construed narrowly.[13] I would follow this general rule in interpreting § 19.35(1)(am)1.

¶ 100. The majority opinion's reasoning is that "[p]aragraph (am) is not subject to a balancing of interests. . . . Therefore, the exceptions to paragraph (am) should not be narrowly construed."[14] The conclusion does not follow from the premise.

¶ 101. Paragraph (am) is not subject to a balancing test because the legislature has already done the balancing. In adopting Wis. Stat. § 19.35(1)(am) (granting access to personally identifiable information) and § 103.13 (granting access to one's own personnel files) the legislature has made the policy determination that an individual, above all others, has a right to access documents that may personally impact that individual, except in circumstances specified in the statutes.

¶ 102. So when the majority opinion says that under § 19.35(1)(am), "the person is entitled to inspect the records unless the surrounding factual circumstances reasonably fall within one or more of the statutory exceptions . . . ,"[15] I am unsure as to what "reasonably fall[s]" means, but the majority cannot mean that a balance test is conducted, because we know

---

[13] *Hathaway v. Joint Sch. Dist. No. 1,* 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984).

[14] Majority op., ¶ 56.

[15] Majority op., ¶¶ 27, 82.

there is no balancing done in evaluating a request under (am).[16] Rather, the majority must simply mean that the person requesting the information is entitled to inspect the record unless one of the statutory exceptions in (am) applies in that particular case. I disagree that an exception in (am) applies in this case.

¶ 103. The majority opinion concludes that the information Hempel requests falls within the exception because there was an ongoing investigation when he made his request.[17] On what basis does the majority opinion reach this conclusion, when the Baraboo Police Chief specifically stated that no further action would be taken on the sexual harassment complaint? The majority relies on the fact that the Police Chief advised Hempel that if another complaint of a similar nature arose in the future, the closed complaint could be reexamined.[18] Thus, the majority opinion states that "[t]he instant complaint would then be a record 'maintained' in connection with a pending complaint."[19]

¶ 104. There are two reasons why there was no ongoing investigation for the purposes of Wis. Stat. § 19.35(1)(am)1. First, the Police Chief advised Hempel that the documents would not be released under Wis. Stat. § 103.13 because no records in Hempel's personnel file were used for the purposes specified in § 103.13. Section 103.13 requires "[e]very employer . . . upon the request of an employee . . . [to] permit the employee to inspect any personnel documents which are used or

---

[16] Majority op., ¶ 27 ("These requests are not subject to any balancing test; the legislature has done the balancing by enacting statutory exceptions to the disclosure requirements.").

[17] Majority op., ¶ 57.

[18] Majority op., ¶ 37.

[19] Majority op., ¶ 37.

which have been used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, termination or other disciplinary action . . . ."[20]

¶ 105. The Chief's explanation for refusing to release the information under Wis. Stat. § 103.13 means that there was no ongoing investigation into the employee's conduct.[21] I do not determine whether the Police Chief was correct in denying the request under § 103.13. That issue is not before us. Rather I make the following point: It is hard to understand how the

---

[20] Wisconsin Stat. § 103.13(6) provides the following exceptions to records open to employees:

(6) Exceptions. The right of the employee or the employee's designated representative under sub. (3) to inspect his or her personnel records does not apply to:

(a) Records relating to the investigation of possible criminal offenses committed by that employee.

(b) Letters of reference for that employee.

(c) Any portion of a test document, except that the employee may see a cumulative total test score for either a section of the test document or for the entire test document.

(d) Materials used by the employer for staff management planning, including judgments or recommendations concerning future salary increases and other wage treatments, management bonus plans, promotions and job assignments or other comments or ratings used for the employer's planning purposes.

(e) Information of a personal nature about a person other than the employee if disclosure of the information would constitute a clearly unwarranted invasion of the other person's privacy.

(f) An employer who does not maintain personnel records.

(g) Records relevant to any other pending claim between the employer and the employee which may be discovered in a judicial proceeding.

[21] See majority op., ¶ 11.

211

majority can assert there was an ongoing investigation in light of the Police Chief's assurances to the contrary and his refusal to release the documents pursuant to § 103.13.

¶ 106. Perhaps because of the obstacles to fitting the request into the Wis. Stat. § 19.35(1)(am)1. exception, the majority opinion has difficulty persuading itself that Hempel is the subject of an ongoing investigation for the purposes of § 19.35(1)(am)1. and should be denied access to records. The majority thus hedges its conclusion, stating: "Hence, *to some degree,* the instant 'investigation or other circumstance' was still 'ongoing' at the time of Hempel's open records request."[22]

¶ 107. The second reason there is no "ongoing investigation" for the purposes of Wis. Stat. § 19.35(1)(am)1. is that the Police Chief's memo advised Hempel that the document describing the complaint would be kept for three years starting June 8, 2000.[23] Hempel argues that no investigation proceeded after June 2003, yet this case (and the ongoing investigation theory) persists.

¶ 108. As the majority opinion recognizes, the purpose of paragraph (am) is to enable a person to "determine what information is being maintained and whether this information is accurate."[24] In keeping with this objective, I conclude that Hempel's request does not fall within the exception to access set forth in Wis. Stat. § 19.35(1)(am)1. The information should therefore be released to Hempel with appropriate redactions as needed.

---

[22] Majority op., ¶ 37 (emphasis added).

[23] Majority op., ¶ 37.

[24] Majority op., ¶ 55.

¶ 109. The majority opinion next addresses the exception to access to open records contained in Wis. Stat. § 19.35(1)(am)2.b., which reads as follows:

2. Any record containing personally identifiable information that, if disclosed, would do any of the following:

. . . .

b. Identify a confidential informant.

¶ 110. The majority opinion quickly concludes that the phrase "confidential informant"[25] is ambiguous and ranges widely in examining legislative history. The majority opinion claims that that § 19.36(8)(a)1. (relating to confidential informants to law enforcement agencies) is part of the background against which paragraph (am) should be interpreted[26] and that "[t]he very existence of paragraph (am) may have facilitated [the adoption of § 19.36(8)(a)1.] about access to public records concerning law enforcement informants."[27]

¶ 111. However, the majority opinion never examines the definition of "informant" in Wis. Stat. § 19.36(8)(a)1., which refers to requests under Wis. Stat. § 19.35 (1)(a), or § 19.36(8)(b), which authorizes redaction of records identifying informants and release of records identifying informants. Section 19.36(8)(a)1. reads as follows:

"Informant" means an individual who requests confidentiality from a law enforcement agency in conjunction with providing information to that agency or, pursuant to an express promise of confidentiality by a law enforcement agency or under circumstances in

---

[25] Majority op., ¶ 44.

[26] Majority op., ¶ 55.

[27] Majority op., ¶ 53.

which a promise of confidentiality would reasonably be implied, provides information to a law enforcement agency or, is working with a law enforcement agency to obtain information . . . .

¶ 112. Section 19.36(8)(a)1. requires an express condition of confidentiality in exchange for information or circumstances in which a promise of confidentiality would be implied. Section 19.36(8)(b) allows the authority to release a record after redacting information identifying the informant or to release the record with identifying information intact if the public interest in open records outweighs the harm done the public by providing access.

¶ 113. After examining legislative history, the majority opinion does not define "confidential informant." The closest it comes is the assertion that the Department claims "it told witnesses that any information they provided would remain confidential and therefore this exception [Wis. Stat. § 19.35(1)(am)2.b.] would apply to prevent disclosure." Majority op. ¶¶ 39, 57. The Chief's affidavit, however, does not state that such express promises were made.[28]

¶ 114. If the majority is saying that a confidential informant means any person to whom the Department promised confidentiality or any person who gives a statement under a policy of confidential investigation, the majority is allowing each governmental entity to avoid the operation of the open records law by promising confidentiality or instituting a policy of confidentiality. I do not believe the statute allows such a result.

---

[28] The Chief's affidavit merely interprets the Harassment Policy's stating that a confidential investigation would be conducted as a promise of confidentiality. Hempel's brief in this court seems to accept that such promises were made.

¶ 115. The majority's conclusion that Wis. Stat. § 19.35(1)(am)2.b. bars the release of the records is unsupported by the record before us, the statutes, or case law.

¶ 116. The record shows that the Police Department successfully redacted personally identifiable information in the documents that it did release. There is no reason it could not do the same in any other documents. The documents can be redacted pursuant to Wis. Stat. § 19.36(6), which provides that "the authority having custody of the record shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release." Section 19.36(8) provides for redacting information about informants when a request for records is made under § 19.35. In order to protect the names of informants, the Police Department can simply redact the names from the record.

¶ 117. The majority opinion admits as much in discussing the records Hempel did get access to: "The redaction authorized by Wis. Stat. § 19.36(6) protected the privacy and confidentiality of certain witnesses without hiding alleged conduct."[29]

¶ 118. Prior case law illustrates that in the past, names have been ordered redacted when necessary to protect individuals. For example, in *Linzmeyer v. Forcey*,[30] this court stated that the students who had provided information regarding a high school teacher " 'could be protected by a redaction of the Report in accordance with Wis. Stat. § 19.36(6).' "[31]

[29] Majority op., ¶ 70.

[30] *Linzmeyer v. Forcey*, 2002 WI 84, 254 Wis. 2d 306, 646 N.W.2d 811.

[31] Majority op., ¶ 42 (quoting *Linzmeyer*, 254 Wis. 2d 306, ¶ 40).

¶ 119. In *Linzmeyer,* the court concluded that the names of the students should be redacted because they had privacy interests, but that the students were not "confidential informants" because none of the students gave information "in exchange for a promise of confidentiality." *Linzmeyer,* 254 Wis. 2d 306, ¶ 20. The court went on to say that "[a]lthough it is arguable that some of the students may have acted under circumstances that reasonably implied a promise of confidentiality, this court is not in a position to determine whether that was the case." *Linzmeyer,* 254 Wis. 2d 306, ¶ 20.

¶ 120. The Baraboo Police Department rests its confidential informants argument on its contention that it was conducting a "confidential investigation" under the City's Harassment Policy. The Harrassment Policy in the record merely states that upon receiving a complaint of sexual harassment an official shall conduct a confidential investigation.[32] The Policy contains no promise of confidentiality in exchange for information.

¶ 121. If this Policy were read to satisfy the standard for "confidential informant" under Wis. Stat.

Consistent with *Linzmeyer,* this court in an earlier case upheld a denial of access to records because "portions of the records . . . would reveal the name of a confidential informant who had been given a pledge of confidentiality by the Department [of Revenue] in exchange for the information [concerning the informant's employer's tax returns]." *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta,* 162 Wis. 2d 142, 149, 469 N.W.2d 638 (1991).

[32] The relevant portion of the policy prohibiting sexual harassment reads as follows: "Upon receiving a complaint of harassment prohibited by this policy, the department head, supervisor or official to whom the complaint was made should promptly report the complaint to the Mayor and the Chairperson of the Personnel Committee and also conduct a confidential investigation of the alleged harassing activity."

§ 19.35(1)(am)2.b., and applied as the majority opinion applies it here, can't every public employer under a blanket of a "confidential investigation" policy protect documents from release and deny an individual access under Wis. Stat. § 19.35(2)b?

¶ 122. The record does not show any express grant of confidentiality in the present case, and the City's Harassment Policy cannot be interpreted as rendering all employees who give any information "confidential informants." In any event, there is no good reason why, like in *Linzmeyer,* names could not have been redacted in the present case from internal investigatory documents.

¶ 123. Unlike the majority, I would give Hempel documents under Wis. Stat. § 19.35(1)(am), redacted as needed.

II

¶ 124. The majority opinion then examines Hempel's request under Wis. Stat. § 19.35(1)(a) for access to the relevant records. Wisconsin Stat. § 19.35(1)(a) grants a requester the right to inspect any record and reads as follows:

> Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

217

¶ 125. There are statutory and common law exceptions to disclosure. When none applies, Wisconsin law requires a records custodian to conduct a balancing test.[33] The custodian in the instant case concluded that permitting inspection would harm the public interest and that this harm trumps the legislatively recognized public interest in an open and transparent government.

¶ 126. The majority frames the issue as follows: "In other words, the custodian [of the records] must determine whether the surrounding factual circumstances create an 'exceptional case' not governed by the strong presumption of openness."[34] Both the City of Baraboo and Hempel agree that the City must show that the harmful effects that might occur *in this case* outweigh the presumption of disclosure.[35]

¶ 127. The Police Department provided six reasons it believes make the instant case an exceptional case justifying the denial of Hempel's request for records. As I shall show, however, the reasons proffered are applicable to every case in which a complaint is filed against a police officer; none is specific to the instant request for information. None demonstrates that this case presents exceptional circumstances justifying denial of Hempel's request for records. The Police Chief's reasons have been paraded before this and other courts time and again. Yet the majority opinion proceeds as if this case is the first time the court has seen these reasons.

---

[33] *Linzmeyer,* 254 Wis. 2d 306, ¶ 25 (citing *Woznicki v. Erickson,* 202 Wis. 2d 178, 183–84, 549 N.W.2d 699 (1996)); *see also* majority op., ¶ 28.

[34] Majority op., ¶ 63.

[35] Brief of City of Baraboo at 5; Brief of Hempel at 20–21.

¶ 128. The reasons seem to be just a general expression of a reluctance to reveal records. Government officials (like most people) prefer to work outside the public eye. This uneasiness with revealing records runs counter to the legislature's unequivocal declaration in Wis. Stat. § 19.31 that government records are presumptively open. By accepting these reasons as valid the majority opinion appears, I think, to allow a police department (and other entities) to adopt a blanket exception to determine when its records are off limits.

¶ 129. I will state and then address each "exceptional reason" relating to the instant case in turn.

¶ 130. *Reason #1.* The City harassment policy provides for a confidential investigation.

¶ 131. *Reason #2.* Disclosure would interfere with the ability to conduct thorough, confidential, internal investigations.

¶ 132. *Reason #3.* "Disclosure . . . would interfere with and hamper the City['s] ability to ensure employees an opportunity for satisfying careers and fair treatment . . . and would impinge upon the City's right and opportunity to . . . retain competent law enforcement personnel."[36]

¶ 133. *Reason #4.* Nondisclosure is required to protect the privacy rights of individuals who cooperated in the investigation and to protect them from harassment or other jeopardy.

¶ 134. *Reason #5.* Nondisclosure is required to prevent loss of morale; disclosure could cause officers to choose other employment and could inhibit the City's ability to hire and retain competent personnel.

[36] Majority op., ¶ 15 (quoting Chief Kluge's reasons for denying access to records).

¶ 135. *Reason #6.* Documents may contain unsubstantiated or untrue information and disclosure might cause unwarranted personal or economic harm.

¶ 136. *Reason #1:* The stamp of confidentiality. In the same way that a prosecutor cannot "shield documents subject to the open records law simply by placing them into a 'prosecutorial file,' "[37] government agencies cannot shield information simply by labeling an investigation leading to the information as confidential. The majority opinion states that a policy of confidentiality is "a factor the custodian may consider in the balancing test."[38] The Policy in the instant case takes a blanket approach to all harassment investigations rather than a case-by-case approach. The City cannot, in my opinion, create its own exception to the public records statute. Indeed the Police Chief recognized that Wisconsin law can override the confidentiality of the investigation.[39]

¶ 137. If this reason is acceptable for denying access, then any governmental entity can institute a confidentiality policy and thereby exempt records from Wisconsin's Open Records Law. Confidentiality cannot be the end-all and be-all. Records can be redacted to protect privacy.

¶ 138. *Reason #2:* Inability to conduct thorough, internal investigations. This reason is generic and may be given for any investigative record. In *Pangman v. Zellmer,* 163 Wis. 2d 1070, 1077, 473 N.W.2d 538 (1991), the Milwaukee Police Department gave the same rea-

---

[37] *Nichols v. Bennett,* 199 Wis. 2d 268, 274, 544 N.W.2d 428 (1996).

[38] Majority op., ¶ 71.

[39] Appendix of Defendants-Respondents, Exhibit 6, A-153, Letter to Attorney Aaron Halstead from Chief of Police Dennis Kluge, March 13, 2001.

son for denying disciplinary action materials, in that instance to the public, using almost precisely the same words as used in the present case.

¶ 139. *Reason #3:* Inhibit ability to hire and retain personnel. Again, this is a stock reason for refusing release of an employee record. In *Village of Butler v. Cohen,* 163 Wis. 2d 819, 828, n.3, 472 N.W.2d 579 (1991), the village gave substantially this same reason for refusing to release police personnel records to the public.

¶ 140. *Reason #4:* Privacy rights. Again, a generic explanation applicable to all government entities and all personnel records. This reason was also given in *Village of Butler,* 163 Wis. 2d at 828, n.3. As the legislature has provided, records can be redacted.

¶ 141. *Reason #5:* Loss of morale and difficulty hiring and retaining officers. Again, standard reasons in several cases. They were given in *Zellmer,* 163 Wis. 2d at 1083, 1089, and in *Village of Butler,* 163 Wis. 2d 828, n.3.

¶ 142. *Reason #6:* Protecting employees from personal (reputation) and economic harm. This same general reason was proffered by the police department in *Pangman v. Stigler,* 161 Wis. 2d 828, 833, 468 N.W.2d 784 (Ct. App. 1991) and in *Zellmer,* 163 Wis. 2d at 1079. Protecting persons from damage to reputation and economic harm is a good reason if it applies to the specific case, rather than as a reason for never allowing access to any officer's files. Here the employee is asking for information about himself. The names of other persons may be redacted as needed.

¶ 143. Thanks to the majority opinion today, we can call these reasons the "Exceptional Six," when in reality not one of the reasons is uncommon, unique, or "exceptional" to this particular case. Each of these

221

reasons applies to almost every file involving some sort of investigation at every governmental entity.

¶ 144. Indeed, the majority opinion does not even appear to be persuaded by these reasons, but sets the bar low enough that it nevertheless accepts them. The majority opinion's analysis of the reasons is often noncommittal. For example, the majority, while not "fully endorsing"[40] the City's argument, finds Reason #5 "plausible."[41] The purpose of the balancing test is to determine whether an exception can override the strong presumption of records disclosure that is vital to the functioning of Wisconsin's government. A "plausible" reason should not be sufficient to defeat the presumption established by the legislature.

¶ 145. The majority also concedes that the second part of Reason #5, namely, the inability of the Police Department to hire and retain quality employees because of fear that personnel records will be released, is weak: "Public employees are frequently subject to a greater degree of public scrutiny than their private counterparts. This scrutiny comes with the territory."[42] The only argument the majority presents for still allowing this reason to "slightly" weigh in the Department's favor is that this case deals with rank-and-file officers who should expect more personal privacy than a prominent public official.[43]

¶ 146. It is unclear from the rest of the majority's hesitant language and analysis how the majority concludes the balancing test weighs in favor of nondisclosure. With this weak application of the balancing test

---

[40] Majority op., ¶ 74.

[41] Majority op., ¶ 74.

[42] Majority op., ¶ 75.

[43] Majority op., ¶ 75.

under Wis. Stat. § 19.35(1)(a), the majority opinion renders the undistinguished, exceptional.

¶ 147. The majority opinion denies it is creating a "blanket exception to the open records law . . . "[44] when in fact that may be exactly what it is doing, provided of course that the next police department (or any other governmental entity) that receives an open records request repeats the "Exceptional Six" for the benefit of the court.

¶ 148. For the reasons set forth, I respectfully dissent.

¶ 149. I am authorized to state that Justices ANN WALSH BRADLEY and LOUIS B. BUTLER, JR. join this opinion.

---

[44] Majority op., ¶ 73.